Opinion delivered April 22, 1887.

---

No. 5793

FORT WORTH STREET RAILWAY COMPANY *v.* ROSEDALE STREET RAILWAY COMPANY.

1. CITY ORDINANCE—STREET RAILWAY.—The city of Fort Worth, by ordinance of July 14, 1874, authorized the Fort Worth Street Railway Company to build a street railway on one of several designated streets, and by the same ordinance reserved the right to determine when the require-

ments of traffic would necessitate a road over either of the others; and if the company, on being notified on which of the streets a new railway was desired, did not comply with the notice in twelve months, then the right to "those streets" was forfeited. The ordinance was accepted by the company and a road built on one of the streets. *Held,* that the passage of ordinances thereafter, giving again to the company the right to construct a street railway over two of the streets designated in the first ordinance, and requiring their completion within ninety days, was a sufficient notice, under the requirements of the first ordinance, that the city desired the new road built, and a failure to build thereafter within the time after notice required by the first ordinance worked a forfeiture of the right to build on any of the streets designated in the first ordinance.

2. CORPORATION.—A company incorporated under general statutory law acquires thereby no right other than a corporate existence, and no powers aside from those which the law declares the corporation may exercise, except such as are necessary and proper to the carrying on the business contemplated and authorized by the charter.

3. STREET RAILWAYS.—The charter of a street railway incorporated under general law can confer, in and of itself, no right to use any street, no matter what may be its provisions; such right to use must be acquired from the municipal government.

4. SAME.—A city has the right to designate what particular portion of its street shall be occupied by the track of an incorporated street railway company. The grant of a right to use a street for a railway track will not preclude the city from granting a like privilege over the same street to another company, unless the right granted in the first instance could not be made available if the privilege conferred in the last grant were exercised. If the first grant be general and the last specifies a particular portion of the street upon which the track may be laid, the enjoyment of the right under the specific grant will be protected when, under it, in the public interest, the road is constructed.

APPEAL from Tarrant. Tried below before the Hon. A. J Booty.

The opinion states all facts necessary to its being understood.

*Carter, Wynne & DeBerry* and *John D. Templeton,* for appellant, on their proposition that when the Fort Worth company complied with the requirements of ordinance number sixty, fixing and filing its freight and passenger tariff, and by filing its acceptance of the terms of the said ordinance, with the city secretary, and by building the line of road as required by said ordinance, the act of the city in passing the ordinance, and the act of the said company in performing the said acts done by it, constituted a contract binding upon the city, and vested in the company the

right to build on the streets designated in said ordinance, to wit, Houston and Weatherford streets and Jenning's avenue, which was a property right of which it could not be deprived, except upon failure to comply with the terms of the said ordinance, cited the following authorities: City of Burlington v. Burlington Street Railway Company, 49 Iowa, 147; Kansas City Horse Railroad Company v. Hovelman, 20 American and English Railroad Cases, 17; same case, 79 Missouri, 632; 2 Woods's Railway Law, 987; North Beach & Mission Railway Company, 32 California, 499; Paterson, etc., Horse Railway Company v. Mayor, etc., of Paterson, 24 New Jersey Equity, 159; Rerick v. Kern, 14 Sergeant and Rawle, 267; same case in 2 American Leading Cases, 682; Louisville Gas Company v. Citizens' Gas Company, 115 United States, 685; New Orleans Gas Company v. Louisiana Light Company, 115 United States, 650; New Orleans Waterworks Company v. Rivers, 115 United States, 674.

On their proposition that the ordinance of the city attempting to take away the right of the Fort Worth company to construct its line on Houston and Weatherford streets and Jennings avenue, not for the purpose of clearing the said streets of such structures, but for the purpose, and in order that the right of placing lines of street railway on said streets might be enjoyed exclusively by the Rosedale company, was unreasonable, partial, oppressive and void, being an attempt, by mere ordinance, to transfer valuable rights from one person to another, they cited Dillon on Municipal Corporations, sections 319, 320, 321, 322 and 314; Bragg's Appeal, 43 Pennsylvania State, 512; Quincy v. Railroad Company, 92 Illinois, 21; Railway Company v. People, 91 Illinois, 251; Railroad Company v. Cape May City, 35 New Jersey Equity, 419.

On their proposition that the Fort Worth company having in all respects complied with ordinance number sixty, it had the superior right to occupy for street railway purposes the center of the streets, although the center was not in terms designated, they cited Lawson on Usages and Customs, section 50, page 90; section 223, page 462, Id.; section 175, page 331, Id.; section 183, page 369, Id.

They insisted that the court having found, as a matter of fact, that the Fort Worth company had complied, in all respects, with the ordinance relating to the construction of its road; that it built within the specified time the line required of it, expending nine to ten thousand dollars in building it; that it had entered upon

the street with the intention of protecting its right to use the same for railway purposes, and that the company, in good faith, intended to construct a connecting line on Houston and Main streets; and having found as a matter of law that, according to the true construction of ordinance number sixty, only one line of road was necessary in order to protect the right of the Fort Worth company to use the designated streets, unless in default, by notification from the city to build additional line or lines, and a failure to comply therewith, that the final judgment entered should have been in favor of the defendant, and not in favor of the plaintiff.

Among the papers in this case is filed also a written argument in behalf of appellant, by John F. Dillon, Esq.

*Hunter & Stewart,* for appellee, cited 1 Dillon on Municipal Corporations, third edition, sections 89 to 91; 2 Dillon on Municipal Corporations, third edition, sections 715, 716, 727; 10 Otto, 559; Cooley's Constitutional Limitations, second edition, pages, 206, 207, 208; Jackson Horse Railway Company v. Interstate Rapid Transit Company, Federal Reporter, volume 24, number 7, page 307; Gulf City Street Railway Company v. Galveston City Railway Company, 65 Texas, 503; Revised Statutes, article 375; 4 American and English Railroad Cases, 406; Bigelow on Estoppel, pages 492, 493, note 2.

STAYTON, ASSOCIATE JUSTICE. This action involves a contest between the corporations plaintiff and defendant, as to their respective rights to use for the purposes of their roads Houston and Weatherford streets and Jennings avenue in the city of Fort Worth.

Both corporations were incorporated under the general incorporation law of the State; the appellant on June 8, 1874, and the appellee on March 20, 1884.

The appellant bases its right on the following ordinance:

"ORDINANCE No. 60.

"An Ordinance granting certain privileges to the Fort Worth Street Railway Company.

" *Be it ordained by the City Council of the City of Fort Worth:* SECTION 1. The Fort Worth Street Railway Company, a corporation duly organized and authorized by charter under the laws of Texas, certified to by the Secretary of State, under

the great seal of the State of Texas, bearing date June 8, 1874, be and said company is hereby fully authorized and empowered with the right to construct, equip, operate, maintain, own and control, in accordance with the conditions and terms in their said charter contained, one or more lines of street railway, together with all necessary switches, stables, offices and depots, on either of the following named streets and their extensions in said city, to-wit:   Belknap and Weatherford streets, running east and west; Jennings avenue, Houston, Main and Rusk streets, running north and south; and such other streets or avenues in said city as may, on application of said company, be designated by ordinance by the said City Council aforesaid; provided, said company shall construct and operate at least one line of street railway on one of the above named streets, running from the public square to the Texas Pacific railway depot, or vicinity thereof, within eighteen months from the date of this ordinance, or within six months from and after the completion of the Texas Pacific railway to the said city of Fort Worth; and provided further, that said Fort Worth Street Railway Company shall fix a rate of passenger fare not to exceed ten cents per mile or less, and a freight tariff not to exceed fifty cents per hundred pounds per mile or less.

"SEC. 2.   That the City Council of the city of Fort Worth reserve the right to determine when the requirements of traffic necessitate any further track than the one selected and built by said company in pursuance of the rights granted it, in the first instance, and shall then notify the company of their judgment, and specify the street on which they deem the railway desirable, and if the company shall not comply with said notice within twelve months, then the right to those streets shall be forfeited.

"SEC. 3.   That on the filing by said Fort Worth Street Railway Company of a duly certified copy of their said charter, and the written acceptance of said company of this ordinance, with the secretary of said city, said company shall be authorized to act hereunder without further ordinance or permit by the City Council.

"SEC. 4.   This ordinance to take effect and be in force from and after its passage.

"Passed July 14, 1874.

"Approved July 15, 1874."

It selected Main street, and thereon constructed a line of road

from the public square of the city to, at or near the depot of the Texas Pacific railroad within the time prescribed by the first section of the ordinance, but prior to the passage of the ordinances under which the appellee claims, it had not constructed any line of road on either of the streets in controversy.

The appellee claims the right to use the streets under several ordinances which, in terms, give the right, and one of them gives the right to lay its track in the center of Houston street. These ordinances also embrace other streets, and the first of them was passed on April 4, 1884, and the last on June 20 of the same year.

On May 2, 1882, an ordinance was passed giving the appellant the right to construct its road on Jennings avenue and other streets named, and which are not involved in this controversy, and this, by the terms of the ordinance, was required to be done within ninety days after the passage of the ordinance.

On November 4, 1882, another ordinance was passed, giving to the appellant the right to use Weatherford or Belknap streets, and this also required the road, on which one of these streets was selected, to be completed within ninety days from the passage of this ordinance.

Another ordinance was passed on June 20, 1884, giving to the appellant the right to use a part of Jennings avenue, less than the length of a block, and the track on this was required to be completed within ninety days.

Houston, Main and Rusk streets are parallel, Main street being separated from each of the others by one block, and Jennings avenue is practically a continuation southward of Houston street from its intersection with Ninth street. Weatherford and Belknap streets are parallel and separated by only one block.

This action was brought by the Rosedale company, under an agreement, to settle the rights of the parties, and an order was made restraining it from doing any more work on Houston street until there should be a hearing, which was set for September 26, 1884. The cause was finally disposed of on May 16, 1885, at which time the restraining order formerly granted was discharged and judgment entered perpetually enjoining the defendant from building or operating a railway on the parts of streets which the plaintiff asserted right to use, and from this judgment an appeal is prosecuted. The main controversy is as to the right of the respective parties to use the center of that part of Houston street to which the plaintiff asserts claim.

The condition of the two companies, with reference to work on their respective lines, intention and preparation to use Houston street, and facts which immediately preceded the institution of this suit, are thus stated in the findings of fact by the court:

"7.   That the plaintiff, at the time of the disagreement between the two companies, by reason of the work begun in the night time on Houston street by defendant, had, at great cost, to wit, —— dollars, built its line of railway along the route indicated in the ordinance granting it the right of way, making its line complete from its southern terminus to a point within about five hundred feet of Houston street.

"8.   That about the time stated in the petition and answer the defendant, with a large force of laborers, and about one o'clock in the morning of August 19, 1884, went to work on Houston street in the construction of a street railway track, and dug up Houston street from Fifteenth street to a point thirty feet north of Sixth street. and along the center thereof, when the disagreement arose and resulted in the agreement filed and pleaded, by both parties submitting their controversy to the courts.   That the defendant was acting, in doing work on Houston street, under the supposed right given it by ordinance number sixty.   That defendant was acting under legal advice, and desired not to lose their right to occupy and build on Houston street, and that, if allowed to do so, it (defendant) would yet build and operate a line of railway on Houston street, so that, in connection with their line on Main street, the line would make a kind of circle, so that cars might go around both streets.

"9.   Prior to the nineteenth day of August, 1884, the day on the morning of which, at one o'clock, the defendant began work thereon, neither plaintiff nor defendant had broken dirt on Houston street; the plaintiff, however, had built from its southern terminus to a point on Ninth street, within say five hundred feet of Houston street, and was engaged in the construction of its road in the direction of Houston street, and Houston street lay in its contemplated and projected route; and plaintiff had on hand materials for the purpose of doing said work on Houston street.

"10.   The defendant had not commenced to build, nor contemplated building, any line of which their contemplated line on Houston street was to be a part, save and except that ultimately they intended to build on Houston street, so as to have one continuous line traversing both Main and Houston streets, so as to

make round trips; but no conclusion had been arrived at when this work was to be done."

It is not claimed that the ordinances under which the appellee claims are not sufficient to confer the rights asserted, if, by reason of the ordinance under which the appellant claims, power to confer such rights on the appellee was not taken away from the city. All the right which the appellant has to use the three streets in controversy, except such as it may have to use a part of Jennings avenue under the ordinance of June 20, 1884, it derives through the ordinance of July 14, 1874.

Whatever may be the true construction of that ordinance, it is clear that under its second section the appellant has lost the right to use Weatherford street or any other part of Jennings avenue other than such part of it as it may be entitled to use under the ordinance of June 20, 1884; for it is evident that the ordinances of May 2, 1882, and November 4, 1882, were sufficient notices of the fact that the city desired a line of road to be placed upon each of them. The only question is as to the rights of each of the parties to use the center of that part of Houston street which the ordinances, in terms, give the appellee the right to use; for neither party asserts an exclusive right to use this or any other of the streets mentioned.

The solution of this question involves two inquiries. First. What rights did appellee take under the ordinance of July 14, 1874? Second. If it acquired the right to use either or all of the streets mentioned in the ordinance, did it acquire the right to use any particular part of any of these streets before an actual appropriation?

Through its act of incorporation, the appellant acquired simply a corporate existence, through which it might conduct the business specified in its articles of incorporation, this being such as the general law, under which incorporation was effected, contemplates. This is the extent of the right and power acquired by the appellant through its articles of incorporation, which are not before us.

The statute specifies the purposes for which, under it, corporations may be created by the voluntary act of the incorporators, and it declares the general powers which such corporations may exercise. One of these purposes is "the construction and maintenance of a street railway;" but a compliance with the statute gives no right other than a corporate existence, and no power other than such as the law itself declares the corporation when

created, may exercise, or such as may be fairly implied from the powers expressly conferred or the nature of the business to be carried on by the corporation. The appellant had the power to construct and maintain a street railway, and we may infer that it was incorporated for the purpose of constructing and maintaining such a road in the city of Fort Worth, for the statute requires the articles of incorporation to state certain facts. First. The name of the corporation. Second. The purposes for which it is formed. Third. The place or places where its business is to be transacted. Fourth. The term for which it is to exist. Fifth. The number of its directors or trustees, and the names and residences of those who are appointed for the first year. Sixth. The amount of its capital stock, if any, and the number of shares into which it is divided. (Revised Statutes, arts. 566, 567.)

The articles of incorporation could not give any right to use a street, and it is a matter of no importance, in this respect, what recitals, other than those required by law, the articles of incorporation filed in the office of the Secretary of State may have contained. To acquire the right to use any of the streets in the city of Fort Worth for the construction and maintenance of its railway, the consent of the city had to be obtained. The Legislature, at the time the appellant was incorporated, through a special charter might have given it the right without the consent of the city to use any of its streets, but this was not done. The Legislature now has no such power. (Constitution, art. 1, sec. 7.)

The ordinance under which the appellant asserts right, recognizes its corporate existence, and was passed in view of that fact and of the general purpose for which it was incorporated, and it assumes to confer upon it "the right to construct, equip, operate, maintain, own and control, in accordance with the conditions and terms in their said charter contained *one or more lines* of street railway."

No *conditions* or *terms* could legally have been inserted in the articles of incorporation, which constitutes the charter, that could have any influence in the determination of the rights involved in this case. If the appellant was of the opinion that there were recitals in the articles of incorporation with reference to which the ordinance was passed, and that these were necessary to the proper construction of the ordinance, then the articles should have been brought before us, and we can not assume that they contained anything which the law neither authorized nor required.

The inquiry is, what rights did the ordinance give? The appellant contends that it gave the right to use all the streets mentioned in it, while appellee contends that it only contemplated that one street running north and south, and another running east and west should be used, and that the right to the former attaches to a street selected and used and not to Houston street, and that the right to the streets running east and west was forfeited under the terms of the ordinance.

The first section of the ordinance gives the right to construct and operate "one or more lines of street railway." This may mean that the company should have the right to construct and operate one or more lines on any one street, or that it may construct and operate a line or lines on a street running north and south, and one or more lines on one street running east and west, and that these lines may be separated or connected, or it might mean, considered without reference to the other language used in the first section of the ordinance, that it may construct and operate a line on every street named in the ordinance.

To determine what was meant the entire ordinance must be considered, and all its provisions must be reconciled or given effect if they may be. After using the language we have quoted, determining what the company might do, it becomes necessary to declare *where this might be done,* and, to fix that, the ordinance declares that these things may be done *"on either* of the following named streets and their extensions in said city to wit, Belknap and Weatherford streets, running east and west; Jennings avenue, Houston, Main and Rusk streets, running north and south." The word "either" does not mean "all," but does mean one or the other of two or more specified things.

The only fair construction of the first section of the ordinance is that it was intended that the "one or more lines" should be constructed on one or the other of the streets named, and not that they might be constructed on "all." The formation of the several clauses of the sentence, in connection with the naming of two streets running in one direction and four running in another, however, would seem to indicate an intention to confer the right to construct *one or more lines* on one of the streets running east and west, and *one or more lines* on one of the streets running north and south.

The proviso to the first section that *at least one line on one* of the above named streets "shall be constructed within the time named, gives force to the proposition that it was intended more

than one line might be constructed on the same street; for, otherwise, the requirement would only have been that a street railway should be constructed between the named points within the time prescribed. It was evidently contemplated that the appellant might desire to use some street or streets not designated, but as to this the further action of the city council was necessary, and an intimation that at some future time the city would, if deemed proper, make a further grant, can not make the grant actually made more extensive than the language used authorizes.

It can not be claimed that the first section of the ordinance gave the right to construct and operate one or more lines on every street named in it. That section makes whatever grant was made and is entitled to a controlling effect in determining what was granted, but it is proper to consider every part of the ordinance and to give to all the language used, every reasonable intendment that we may ascertain the real intention.

The second section of the ordinance is one reserving or asserting the right of the city to compel the appellant to exercise the rights and powers conferred by the first, and not one giving rights. By it the city reserved the right "to determine when the requirements of traffic necessitate any further *track* than the *one selected* and built by the said company in pursuance of the rights granted it in the first instance and shall then notify the company of their judgment, and specify the *street* on which they deem the railway desirable."

The word "track" is doubtless here used in the same sense as the word "line" in the first section; but in its connection conveys the further idea of place—one place—and that a *selected place* under the power of selection given in the first section. Right was given in the first section to build *one or more lines* on either of the named streets running from the public square to the vicinity of the railway depot named, of which there were three; and the second section assumes that one of these streets would be selected, and in compliance with the ordinance *at least one line of street railway* be built thereon, Why assume that one track or street would be selected? Certainly for no other reason than that selection was made necessary by the ordinance.

This one selected track was one to be built by the company "in pursuance of the rights granted it (the company) in the first instance." The first section, as we have said, made an express grant, and this was the grant *in the first instance,* but it, in effect, promised to make other grants of right to use streets not

named, and the city, by the second section, may have intended
to secure the power to compel the construction of tracks on other
streets, when deemed necessary, or otherwise to be released from
any obligation thought to have been incurred to make further
grant.

Or, if the words "in the first instance" have reference to the
track first constructed, it may have been the intention of the
city, after one track had been built on one street running north
and south, to secure the power to compel the company to build
on one of the named streets running east and west whenever the
city deemed it necessary, or in case of failure of the company
to do so in the time specified, to withdraw the right to build on
either of the named streets running east and west.

This latter view receives support from the fact that the second
section gives the city the right to "*specify the street* on which
they deem the railway desirable, and if the company shall not
comply with said notice within twelve months, then the right to
*those streets* shall be forfeited." Under the first section, the right
to select a street was given to the company, but if it failed to do
this and construct where traffic necessitated it, the second section
evidently gave to the city the right to specify what *street* should
be used, and in the event the company failed to construct, as
required, to withdraw the right to use some if not all of the
*streets* named.

The declaration is that the failure to construct on the *street* to
be specified by the city shall operate a forfeiture of the right to
use "*these streets*," not simply the street on which the company
may be notified to construct a track. The words "these streets"
evidently refer to some streets in the ordinance before named, or
in some way pointed out, or to be pointed out. Whether these
words embrace all the streets named in the first section of the
ordinance, or only the streets to be specified, it is not necessary
to determine, as it is not necessary to determine whether they
may also refer to streets which, though not named, it was pro-
vided would be designated for the use of the appellant on its
application.

One or the other of the constructions to which we have referred
must be placed on the second section of the ordinance, and un-
der neither of them is there anything which can so enlarge the
grant expressly made by the first section, as to give to the appel-
lant the right to construct and operate one or more lines on each
and all of the streets named.

If we look to the location of the streets named with relation to each other as grouped in the ordinance, to the condition of affairs at the time the ordinance was made, and to the subsequent conduct of the parties, there can be but little if any doubt as to the real intention and understanding of the parties at the time the ordinance was passed, and up to a short time before this litigation began. These all tend to sustain the construction of the ordinance which we believe to be the true one.

If, however, we are incorrect in the construction we place on the ordinance, the same disposition of this case would follow upon another ground. Neither party claims, nor could claim, an exclusive right to use any one of the streets named in the ordinance now in controversy in this case. If the city deems it necessary to the public welfare that both companies may operate a railway on any one or more of the streets, it doubtless has the power to permit this to be done, unless it be shown that one of them has a prior grant of right which can not be exercised if another like grant be used by another company.

If the appellant's theory of the case was correct, and under the ordinance it has the right to construct and operate a street railway on Houston and Weatherford streets and on Jennings avenue, it is certainly true that a like right has been given to the appellee to use parts of these same streets. If the grant to one was no more specific than to the other, it would seem that the first actual occupant would have the right, so far as the other company was concerned, to use the part of the street so occupied, and the last occupant would be compelled to use some other part of the street.

We can not doubt, however, that the city, if it had the power to make the grant made to either party, had the power to declare that one company should occupy one part of the street and the other another. The general right, however, to build and operate a street railway in a given street does not confer a right to use any particular part of the street prior to the time the railway is actually constructed with the consent, express or implied, of the municipal government.

In the case before us, the city of Fort Worth had conferred on the appellee, expressly, the right to construct and operate its railway in the center of a part of Houston street, and at the time that right was conferred the appellant had not occupied any part of that street, and as the record shows, did not then contemplate using that street at all for an indefinite period.

The appellant had no express grant to use any particular part of that street, and such a right can not be implied for the more general right to use some part of the street. Nor can such a right be established by custom. The city had the power to determine what part of a street any street railway should occupy, or whether a street should be so used at all. This power, given to it to be exercised for the public welfare, it may and must freely exercise, and its determination is conclusive of the question.

In disposing of this case we have not deemed it necessary to consider the power of the city council, at the time the ordinance on which the appellant bases its right was passed, to make such an ordinance. The appellee shows a right to use so much of the center of Houston street as it asserts the right to use, and it shows a right to use Weatherford street and Jennings avenue, so far as it claims such right; from which it follows that the judgment of the district court is correct and it must be affirmed. It is so ordered.

*Affirmed.*