REAGAN BALE CO. v. HEUERMANN.†

(Court of Civil Appeals of Texas. San Antonio. May 29, 1912. Rehearing Denied June 26, 1912.)

1. CORPORATIONS (§ 71*)—POWERS—PREFERRED STOCK—ISSUANCE—CREDITORS.

There being no statute authorizing a corporation to issue preferred stock, the corporation could not issue such stock, so as to make the rights of the owners superior to the rights of creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 447; Dec. Dig. § 71.*]

2. CORPORATIONS (§ 156*)—PREFERRED STOCK-HOLDERS—RIGHTS.

In the absence of a statutory or contract provision, the holders of preferred stock in a corporation are in the same position as to the corporation itself and as to creditors as the holders of common stock, except that they are entitled to stipulated dividends before any dividends are paid to the holders of common stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–583, 593–603; Dec. Dig. § 156.*]

3. CORPORATIONS (§ 156*)—PREFERRED STOCK —RIGHTS OF HOLDERS.

A Texas corporation issued preferred stock entitled to a preferred dividend of 8 per cent., and to share equally with the common stockholders in all dividends after a similar dividend had been earned and paid on the common stock. It also provided that, if the company should fail for two years to declare and pay dividends on the preferred stock of at least 8 per cent., the owners at their objection might mature the shares into an obligation of the corporation to pay on demand the par value thereof, together with interest at 8 per cent. from August 10, 1907, provided that the corporation should be then entitled to be credited with all dividends declared and paid on the stock. The preferred stock had no voting power, and the company was also given the option after the aggregate dividends paid thereon amounted to 100 per cent. to retire the shares at par. *Held,* that the holders of such stock were stock holders, and not creditors, and, on default of dividends, could not, by electing to mature the shares, become a creditor entitled to share in the assets of the corporation with or in advance of other creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–583, 593–603; Dec. Dig. § 156.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Action by H. Heuermann against the Reagan Bale Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Templeton, Brooks, Napier & Ogden, of San Antonio, for appellant. Houston, Boyle, Storey & Davis, of San Antonio, for appellee.

JAMES, C. J. This suit was instituted by appellee to recover of appellant the par value of 15 shares of stock issued to him by appellant, with interest at the rate of 8 per centum per annum from the date of purchase of the shares, namely, August 16, 1907. The court heard the cause, and rendered judgment in favor of appellee for $2,022, with interest at the rate of 6 per cent. from date of judgment.

The basis of the suit is the following certificate of shares: "Incorporated under the Laws of the State of Texas. Preferred Stock. Reagan Bale Company. San Antonio, Texas. Capital Stock: Common, $300,000.-00; preferred, $200,000.00—$500,000.00. Fully paid and nonassessable. This is to certify that H. Heuermann is the owner of fifteen preferred shares of the capital stock of the Reagan Bale Company; transferable only on the books of the company, in person, or by attorney, upon the surrender of this certificate. The shares represented by this certificate are a part of an authorized issue of two thousand preferred shares, of the par value of one hundred dollars each. The outstanding shares of said preferred issue have a preference dividend right, on an accumulative basis, over all other outstanding shares of stock of this company, to the amount of eight per centum (8%) per annum, after the payment of which, and of a like dividend on all other outstanding shares, the said outstanding preferred shares shall participate with all other outstanding shares in all dividends declared and paid by the company, such dividends to be distributed on all outstanding shares (common and preferred) alike in proportion to their par value. In the event this company shall fail, for any two years, to declare and pay dividends on the share of stock represented by this certificate of at least eight per centum (8%) per annum, then and in that event the owner of

such snares, or any of them, shall have the option, upon giving the company six months' notice, in writing, of the intention so to do, mature such shares of stock into an obligation of this company to pay, on demand, to the owner of such shares, the par value thereof, together with interest thereon at the rate of eight per centum (8%) per annum from the 16th day of August, 1907: Provided, that on said interest obligation the company shall be entitled to be credited with the amount of all dividends declared and paid on such shares of stock. None of the shares of stock represented by this certificate, nor the owners thereof, shall be entitled to vote at any stockholders' meeting; that right being conferred, exclusively, upon the owners of the common stock. The company shall have the option, at any time after the aggregate amount of the dividends paid on the shares of stock represented by this certificate shall have amounted to as much as one hundred per centum (100%) on the par value thereof, to retire any or all of said shares by paying to the owner the par value thereof. In witness whereof, the duly authorized officers of this Company have hereunto subscribed their names, and caused the corporate seal to be hereto affixed, at San Antonio, Texas, this the 16th day of August, 1907. P. H. Swearingen, President. [Seal.] M. Coppard, Assistant Secretary."

It was admitted that no dividends were paid to appellee, and that the notice was given as prescribed in the certificate, and that appellant is a corporation duly organized under the laws of Texas. It was proved that appellant was in debt in the sum of perhaps $65,000, and that the debts are past due. Appellant has never declared nor paid any dividends because it had none, and its assets are not nearly so much as its debts. The charter permitted the issuance of preferred stock.

It is the contention of appellant that appellee is merely a holder of preferred stock in the corporation, and cannot enforce payment of the amount of his shares while appellant is indebted in a large sum, but that the claims of creditors are superior to those of the holders of preferred stock in the corporation. It is the contention of appellee that the certificate was given to secure him for money borrowed by the corporation, and that he occupies the position of a creditor towards the corporation. There are no facts or circumstances tending to indicate that appellant borrowed money from appellee, unless such proof is contained in the language of the certificate itself.

The statutes providing for the creation of private corporations, as embodied in title 21, arts. 638–749i, Revised Statutes, do not in terms authorize the issuance of stock or shares, although there are a number of provisions fixing the rights, powers, privileges, duties, and liabilities of stockholders, as well as provisions relating to the record, transfer of stock, and payment of subscriptions therefor and forfeiture for failure to pay installments on the same. It is also provided for the opening of books for the subscription to the capital stock, and that the capital stock may be increased. The terms "common" and "preferred stock" are not used in the title mentioned, and, if our investigation has been thorough, there is but one mention of the kinds of stock that can be issued by private corporations, and that is in Acts 1899, p. 102, in which corporations organized for the purpose of storing, buying, and selling oil and gas, salt, brine, and other mineral solutions in Texas are authorized "to issue common stock and preferred stock." No other corporations have been authorized in terms to issue "common and preferred stock," and authority to issue preferred stock at least is only obtained by implication and the general rules applicable to the creation and regulation of such corporations. No direct and positive authority being given by statute for the issuance of preferred stock by a corporation organized and created for the purposes for which appellant was chartered, it becomes necessary to inquire into the authority of such corporations under the general powers granted to them to issue such stock.

[1] It has been held in a number of decisions, and stated in text-books, that a corporation cannot issue preferred stock that would make the claims of the owners of such stock superior to those of creditors, unless authorized by statute so to do. Hamlin v. R. Co., 78 Fed. 664, 24 C. C. A. 271, 36 L. R. A. 826; Trust Co. v. Railway Co. (C. C.) 72 Fed. 92; Heller v. Bank, 89 Md. 602, 43 Atl. 800, 45 L. R. A. 438, 73 Am. St. Rep. 212. In the absence of such statutory authority, the holders of preferred stock are merely stockholders in the incorporation, with all the rights and subject to the liabilities of stockholders, and are not in the position of creditors of the corporation. Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789, 27 L. Ed. 769; Williston v. Railway, 13 Allen (Mass.) 400; Field v. Lamson, 162 Mass. 388, 38 N. E. 1126, 27 L. R. A. 136. It is stated in Clark & Marshall on Private Corporations, § 417c: "It is no doubt safe to say that a corporation cannot, without express authority from the Legislature, issue preferred stock which will give the holders the rights of stockholders, and also give them a claim for dividends or principal which will be superior to the rights of creditors of the corporation to have its assets applied in payment of their claims. Such an arrangement, unless authorized by statute, would be contrary to public policy." In Cook on Corporations, § 271, it is said: "The preferred shareholder is but a shareholder with a right to have his dividend paid before dividends on the common stock are paid, and he is not entitled to any dividend until the corporation has funds which are properly appli-

cable to the payment of dividends. A contract that dividends shall be paid on the preferred stock, whether any profits are made or not, would be contrary to public policy and void." Thompson, in his work on Corporations, § 2236, says: "The better view is that a corporation cannot contract to pay interest or dividends on the shares of its capital stock in the excess of its earnings, unless expressly authorized to do so by statute. The reason is that a corporation cannot, in the absence of legislative sanction, divide its capital stock among its shareholders.".

[2] In the absence of a statutory provision and the provisions of their contract, the holders of preferred stock in a corporation are in the same position as to the corporation itself and as to creditors of the corporation as the holders of common stock, except that they are entitled to their stipulated dividends before any dividends are paid to the holders of common stock. If the statute has authorized certain favorable conditions as to preferred stock, it has been held that such authority was not contrary to public policy, although the propriety of such statutes has been seriously questioned. In the case of Heller v. National Marine Bank, herein cited, a statute gave a lien on the franchises and property to preferred stockholders, and the Court of Appeals of Maryland held that the statute was constitutional, and that stock issued under the provisions of the statute did not contravene public policy, but the court said: "If this stock is preferred stock, pure and simple, the contention of the creditors is right. The law is perfectly well settled that, as between creditors and ordinary preferred stockholders, the latter, as owners of the property of an insolvent corporation, are upon a distribution of its assets entitled to nothing until its creditors are fully paid. There is a palpable difference between the relation of a stockholder and a creditor to the corporate property. Stock, whether preferred or common, is capital; and, generally speaking, a certificate of stock merely evidences the amount which the holder has contributed to or ventured in the enterprise. Such a certificate, representing nothing more than the extent of his ownership in the capital, cannot well be treated as indicating that he is, by virtue of it alone, also to the same extent a creditor, who may compete with other creditors in the distribution of the fund arising from a conversion of the corporation's assets into money. He cannot, if he is simply an ordinary preferred stockholder, in the nature of things, so far as third persons are concerned, be at one and the same time, and by force of the same certificate, both part owner of the property and creditor of the company for that portion of its capital which stands in his name. His certificate, therefore, in such circumstances merely measures the quantum of his ownership. As his

chance of gain throws on the stockholder, as respects creditors, the entire risk of the loss of his contribution to the capital, it is a fixed characteristic of capital stock that no part of it can be withdrawn for the purpose of repaying the principal of the capital until the debts of the corporation are satisfied." In that case the claims of the preferred stockholders were held superior to those of subsequent creditors only by virtue of a Maryland statute which give them such preference.

Under the statutes of this state all stockholders are put upon the same footing, and no authority is granted to corporations to issue stock which would give the holders of it any preference over the claims of creditors of the corporation. Whatever may be the superior rights of preferred stockholders over the holders of common stock, the statute has granted no authority to any corporation to make the claims of any of its stockholders superior to the creditors of the corporation. The laws of Texas recognize no distinctions among stockholders in the corporations created by it, and, while it may be proper and right for the stockholders and the corporation to have any agreements they may desire as among themselves, such agreements cannot affect the relations of the corporation towards the public, nor in any manner affect or impair the rights of creditors. If the rights of preferred stockholders are to be made paramount to the rights of creditors, and the former under a contract with the corporation may demand dividends when none have been earned and consequently not declared, and, if they are not promptly paid, may demand and enforce the demand, not only for the dividends, but for the return of the capital invested, not only would the rights of creditors be disregarded, but the corporation destroyed and the object of its creation thwarted. It is true in this case that the creditors are not parties to this suit, but the corporation has the authority to make the defense and to protect the creditors, and the directors would be liable if they failed to make honest efforts to prevent the funds of the corporation to be diverted from the purposes to which they are dedicated by law. Trust Co. v. Railway Co. (C. C.) 72 Fed. 92. In the case of Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789, 27 L. Ed. 769, the certificates of preferred stock provided that the preferred stock should be a first claim upon the property of the corporation after its indebtedness, and it was held that the preferred stockholders had no claim superior to that of subsequent creditors. The Supreme Court of the United States said: "As to the property, it is declared that the preferred stock is to be and remain a first claim on the property of the company after its indebtedness. But it is stock, and part of the capital stock, with the characteristics of capital stock. One of such characteristics is that no part of the prop-

erty of a corporation shall go to reimburse the principal of capital stock until all the debts of the corporation have been paid. It would require the clearest language to admit of the application of a different rule to any capital stock." As in that case, so in this, the language of the certificate makes appellee a stockholder in the corporation, and, if there was any statutory authority for issuing stock that would give its holder a preference over the claims of creditors of the corporation, this certificate does not give it. The certificate does not in terms purport to give any preference as to dividends over any one but the common stockholders. There is no attempt to give them a position, which would be unlawful, of superiority over the claims of creditors, and neither could they demand that the corpus of the capital of the corporation be taken, at a time when it was heavily in debt, to repay the money invested by the stockholders in the venture for which a charter was granted to the corporation. The appellee in this case was a stockholder when he bought his preferred stock, with the same responsibilities and duties, and, while he had certain advantages as to dividends granted him over owners of common stock, he occupied no superior position as to creditors. As said by the Supreme Court in Warren v. King: "Whatever position the holders of preferred certificates occupied before they accepted preferred stock, whatever special rights of lien they had, they became corporators, proprietors, shareholders, and abandoned the position of creditors, and took up towards existing and future creditors the same position which every stockholder in a corporation holds toward existing and future creditors. His chance of gain by the operations of the corporation throws on him, as respects creditors, the entire risk of the loss of his share of the capital which must go to satisfy the creditors in case of misfortune." There being no statutory authority for giving preference to one class of stockholders which would be superior to the claims of creditors of a corporation, no such authority can be inferred from rules laid down in other states in regard to such matters, if any there be, outside of statutory provisions. As said in Ft. Worth Railway v. Rosedale Railway, 68 Tex. 169, 4 S. W. 534: "The statute specifies the purposes for which, under it, corporations may be created by the voluntary act of the incorporators, and it declares the general powers which such corporations may exercise, * * * but a compliance with the statute gives no right other than a corporate existence, and no power other than such as the law itself declares the corporation, when created, may exercise, or such as may be fairly implied from the powers expressly conferred or the nature of the business to be carried on by the corporation."

[3] Clearly, under the statute, no corporation can give a stockholder any preference over the creditors of a corporation, and, to avoid this proposition, the contention is that appellee is not a stockholder in the corporation, but a preferred creditor; and it is insisted that the facts and circumstances show that such status was established with the corporation. Leaving out of view the name given in the certificate to the holder thereof, we think the language of the certificate fixes the status of appellee as that of a stockholder. It certifies that appellee is the owner of 15 preferred shares of the capital stock of the corporation, that they are a part of an authorized issue of 2,000 shares of the par value of $100 each, having a preference dividend right, on an accumulative basis, over all other outstanding shares of the stock to the amount of 8 per centum per annum, then to participate alike with the holders of common stock in any other dividends. Not only is the preference given in dividends, but, if no dividends are declared and paid in any two years, then the option is given the stockholder to mature the shares into an obligation to pay on demand, not only the 8 per cent. dividends from the date of the certificate, called interest, after the shares are matured, but the par value of the shares. The rights and privileges granted in the certificate indicate a highly preferred stockholder rather than a creditor. The right to vote is denied by the terms of the certificate, but that could not be held to be conclusive as establishing the status of creditor rather than that of stockholder. No mortgage or other lien is given by the certificate on the property of the corporation. There is only a general guaranty of the dividends of the preferred stock. The right given by the certificate to the stockholder to change his status of stockholder to that of creditor had no effect whatever upon his rights as between him and creditors, and, so far as they are concerned, at least, is null and void as being contrary to public policy. In the case of Miller v. Ratterman, 47 Ohio St. 141, 24 N. E. 496, a similar certificate of preferred stock was under consideration, a certificate, too, which was authorized by a statute of Ohio, and, discussing the question as to whether the certificate was one of stock or of indebtedness, the court held: "The relation of a holder of preferred stock is in some of its aspects similar to that of a creditor; but he is not a creditor save as to dividends after the same are declared. Nor does he sustain a dual relation to the corporation. He is either a stockholder or a creditor. He cannot by virtue of the same certificate be both." After holding that the fact that the holder of the certificate being denied a right to vote was not conclusive, and after stating that there is a rule on the subject, the court held: "That rule is that payment of dividends to preferred stockholders differs from such payment to the holders of common stock in that they are entitled to dividends in priority to any dividends upon the common

stock. Dividends to either are to come from one common source, to wit, from funds properly applicable to the payment of dividends; that is to say, net earnings. In the nature of things that must be so. As well might one member of a partnership be permitted to appropriate to his own use assets of the firm to the prejudice of creditors as for a stockholder to do it. A contract to permit this to be done would be contrary to public policy and void."

The certificate of stock does not evidence a borrowing from the preferred stockholder because there is no agreement that the amount paid for the shares will be returned, but it is contemplated that by the payment of dividends the money may be kept forever, and it is only in case of a default for two years in the payment of dividends that a demand for the amount paid for the shares could be made. Undoubtedly the character of a stockholder was placed upon appellee at least until there was a two years default in the payment of dividends, and he was not a creditor, unless a default of the corporation, together with a six months notice on his part, could transform him into a creditor. This, we hold, could not be done, but that, when once he became a stockholder, he was a stockholder as long as he owned his stock. His status was fixed, and he could not, by a mere notice, throw off the chrysalis garb of a stockholder, and emerge as a full fledged preferred creditor. It is true that, where there is statutory authority for it, preferred stock may be issued as security for a loan, but there must be some evidence of such loan, as that the preferred stock is secured by first mortgage bonds, with an agreement that the stock might be redeemed in a certain time. Totten v. Tison, 54 Ga. 139. In the case of Savannah Loan & Building Co. v. Silverberg, 108 Ga. 281, 33 S. E. 908, the certificate provided for the repayment of the money paid for the preferred stock at a definite, fixed time, and that circumstance, and the further one, that the holder of the certificate was denied the right to vote, and "dealing with the certificate in the light of the circumstances under which the money was advanced to the corporation, and in the light of the resolution authorizing its issue," the Supreme Court of Georgia held that the holder of the certificate was a creditor, and not a stockholder. There are no circumstances in whose light the certificate can be viewed in this case. There is no time fixed at which the principal was payable; the only circumstance being that appellee was denied the right to vote. The Georgia court admits that, the mere deprivation of the right to vote would not prevent the holder from being a member of the corporation. In criticism of the opinion in the Silverberg Case the Court of Appeals of Missouri, St. Louis division, stated: "In Savannah v. Silverberg, supra, the decision that the nominal shareholder was in fact a creditor was rested principally upon the binding obligation of the company to redeem the preferred shares by a given date and the circumstances of embarrassment under which they were issued. It is to be noted, however, that, while the court held he was a creditor, it said the dividends to which the certificate said he was entitled semiannually, though really interest, were not meant 'to be paid absolutely and at all events, but simply in the event the corporation earned a sufficient amount to pay each holder of such certificate'—a singular remark." Kidd v. Puritana Food Co., 145 Mo. App. 502, 122 S. W. 784. There is no circumstance bearing upon the purchase of the stock by appellee that tends in the least to indicate that appellant borrowed money from appellee. What the creditors may have afterwards concluded in regard to the matter could not affect the status of appellee with the corporation.

If a corporation, organized under the laws of Texas, has the right and authority to sell its shares to any of its stockholders and bind itself, if there should be default in payment of dividends, to take the capital of the corporation and pay the shareholders not only the amount paid in, but a high rate of interest thereon, one of two things would be the inevitable result; that is, the corporation would be so hampered at its very outset that it could not obtain credit, or, if it did obtain it, the creditors would be absolutely at the mercy of the stockholders. There is nothing in the laws of Texas that gives any authority to any corporation to create a privileged class among its stockholders, or to place it in their hands by a mere notice to change their attitude towards the corporation from that of a stockholder to that of a highly protected creditor. Our laws contemplate that those who buy the stock in corporations assume the risks and hazards of the venture in which the corporation has embarked, and that creditors can deal with the corporation with the assurance that the men constituting it cannot absorb the capital of the concern, and leave them without security. The right to have precedence over creditors in this case is not based upon any statute of Texas, nor upon any decision of this or any other state. On the other hand, we have seen no decision that sustains the claim that without statutory authority, without any necessity being shown for the attempt to prefer stockholders over ordinary creditors, a corporation has any such power. The certificate in this case is the only evidence upon which appellant rests his right to take the capital of a corporation largely in debt, and not only deprive creditors of their just dues, but to practically destroy the corporation of which he is a member. The authorities cited by appellee fail to sustain its contention.

The judgment is reversed and judgment here rendered that appellee take nothing by his suit, and pay all costs of this suit.

FLY, J., did not sit in this case, disqualifying himself.