Young v. Lyons Milling Co.

---

No. 27,479.

R. G. Young, *Appellant*, v. The Lyons Milling Company, Sydney Silverman, E. C. Davis and G. W. Goss, *Appellees*.

(256 Pac. 717.)

SYLLABUS BY THE COURT.

Corporations—*Preferred Stock—Status and Rights of Preferred Stockholders.* A corporation issued and sold shares designated as preferred cumulative nonvoting shares of the capital stock, transferable only on the books of the company, evidenced by a certificate which recited that the holder was entitled to a dividend of seven per cent per annum which the corporation guarantees. The corporation reserved the right to redeem the stock at any time after three years from date of the certificate, paying the holder the face value and accumulated dividends. It was also stipulated that the holder should be entitled to receive the face value plus accumulated dividends upon the surrender of the certificate on and after a fixed date and thirty days' notice in writing of the holder's intention to surrender the certificate, interest

Corporations, 14 C. J. pp. 379 n. 91, 380 n. 94, 383 n. 31, 388 n. 74, 389 n. 80, 414 n. 8, 416 n. 28, 417 n. 37, 418 n. 39, 798 n. 47; 27 L. R. A. 140; 21 L. R. A. n. s. 228; 39 L. R. A. n. s. 1007; 7 R. C. L. 200, 201.

payable quarterly. *Held,* that the certificate was a certificate of stock and not an evidence of indebtedness, and that the holder was a stockholder of the corporation and not a creditor.

Appeal from Rice district court; RAY H. BEALS, judge. Opinion filed July 9, 1927. Affirmed.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellant.

*Ben S. Jones, W. W. Stahl,* both of Lyons, and *Paul R. Stinson,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: R. G. Young filed a petition alleging that Sydney Silverman, E. C. Davis and G. W. Goss, as a committee or board of trustees of the creditors of the Lyons Milling Company, treated as an insolvent company, were disposing of the assets of the milling company to creditors other than the plaintiff, who held certificates called preferred stock, alleged by plaintiff to be certificates of indebtedness, and were refusing to apply any of the proceeds of the milling company to his indebtedness. He asked that they be enjoined from disposing of the assets until plaintiff's right to participate as a creditor in the assets of the milling company be satisfied, and that he be given a judgment upon the certificates he held. In the petition it was alleged by plaintiff that he had acquired by assignment from D. R. Alter, the following certificate:

"INCORPORATED UNDER THE LAWS OF THE STATE OF KANSAS.

PREFERRED STOCK.

Number 98                                                                 Shares, Ten.

THE LYONS MILLING COMPANY, LYONS, KANSAS.

Capital Stock, $75,000.

"The preferred stock evidenced by this certificate shall be entitled to a dividend of seven per cent per annum, which the corporation guarantees. In case of the winding up of the affairs of the corporation, all shares of preferred stock shall be paid before the payment of any shares of common stock.

"The corporation reserves the right to take up this preferred stock at any time after three years from the date of this certificate by paying the holder the face hereof and the accumulated dividends.

"This Is to Certify, That D. R. Alter is the owner of ten preferred cumulative nonvoting shares of the capital stock of the Lyons Milling Company, transferable only on the books of the corporation in person or by attorney on surrender of this certificate.

"In Witness Whereof, The duly authorized officers of this corporation have

Young v. Lyons Milling Co.

hereunto subscribed their names and caused the corporate seal to be hereto affixed at Lyons, Kansas, this ninth day of February, A. D. 1925.

"(Seal.)

"The holder hereof shall be entitled to receive the face value plus accumulated dividends upon the surrender of this certificate on and after February 9, 1927, and after thirty days' notice in writing of holder's intention to surrender this certificate. Interest payable quarterly.

W. B. Boyce, *Sec.*

G. C. Shumacher, *V. P.*

"Shares $100 each."

It was alleged that under the certificate the milling company became indebted to plaintiff in the sum of $1,000 with interest thereon at the rate of seven per cent per annum, which entitled him to be paid out of the assets of the milling company *pro rata* with the general creditors of the corporation. He set up sixty other certificates of different dates, redeemable on thirty days' notice, issued for varying amounts, which had been issued to others but assigned to him, and he alleged that the corporation orally agreed that the stock would be redeemed and the money therefor paid with a seven per cent dividend for interest, and that but for the promise the stock would not have been purchased by any of the stockholders.

A demurrer to the petition was filed by the defendants, which the court sustained, and the reasons for the ruling were stated in the following opinion:

"This matter comes on to be heard before the court on the demurrers of the defendants to plaintiff's petition. The petition contains 61 alleged causes of action, and the prayer of the petition is that the plaintiff have judgment against the Lyons Milling Company for the different sums alleged to be due with interest, and the plaintiff further prays that he be declared to be a creditor of the Lyons Milling Company and permitted to participate in the distribution of the proceeds of the property of the Lyons Milling Company. The precise question to be determined by the court is whether the plaintiff is a stockholder or a creditor, the demurrer challenging the legal sufficiency of the petition. The different parties named in the petition when they made the purchases set forth in the petition knew that they were purchasing stock, and knew that they thereby became stockholders. They could not be both stockholders and creditors and, in my judgment, the court would have no right or authority to declare the plaintiff to be a creditor and not a stockholder of the Lyons Milling Company. The demurrer to the petition will consequently be sustained."

Passing over the question that the petition does not show that the certificates of stock transferable only on the books of the company had been so transferred to the plaintiff, and as to whether he is the

rightful owner of the shares, we will go directly to the question whether holders of such certificates are stockholders in the corporation or are creditors, and also whether the certificates represent shares in the corporation or are merely certificates of indebtedness. First, it may be remarked that it was competent for the corporation to issue not only common but also preferred stock. The legislature has provided that:

"It shall be lawful for any corporation now organized or that may be hereafter organized under and by virtue of the laws of the territory of Kansas or the state of Kansas to issue preferred stock: *Provided,* The holders of seventy-five per cent of the stock of any corporation so issuing preferred stock shall give their assent to such issue, etc." (R. S. 17-234.)

Capital stock in the strict and proper sense of the term is the sum total which the corporation is authorized to issue, and as the amount paid or to be paid for the conduct of the business of the corporation, which for convenience, is divided into shares for which each member is entitled to a certificate showing the number of shares and the interest the holder has in the corporation. (14 C. J. 379.) The shares, whether common or preferred, are units of the capital stock, and such stock is in a sense a trust fund to be used only for corporate purposes and for the security of creditors. Ordinarily the certificates issued to stockholders are not evidence of indebtedness of the corporation to the holder, although the corporation is liable to the holder in the sense that on the winding up of the corporation the holders are entitled to a proportionate share of the assets of the company after the debts are paid. (14 C. J. 389.) It is insisted by the plaintiff that the certificates involved here, although designated as preferred stock, were in fact evidence of indebtedness, and that the holder should be regarded as a creditor rather than as a stockholder. The certificate which has been quoted has all the earmarks of preferred stock. It is so designated and purports to be so many shares of the capital stock of the corporation, declared to be $75,-000 in amount. It fixes the dividends to be paid, and provides that in case of the winding up of the corporate affairs, it shall be paid before the payment of the shares of the common stock and that the owner of these preferred nonvoting shares of the capital stock is only transferable on the books of the corporation. It is true, as plaintiff contends, that the designation of preferred stock in the instrument is not conclusive that the possessor is a stockholder, and that a certificate may be issued under such circumstances and in

such form as to constitute a loan or evidence of indebtedness. However, if the stock is issued as preferred and it forms a part of the capital stock of the corporation, the holder is to be regarded as a stockholder and not a creditor, and the fact that the dividends are in terms guaranteed does not make him a creditor. (14 C. J. 416.) In *Inscho v. Development Co.*, 94 Kan. 370, 146 Pac. 1014, where a corporation issued preferred nonvoting stock and the certificate provided for a fixed yearly dividend of seven per cent payable to the holders out of the earnings of the company before dividends on common stock should be declared, and that it should be preferred as to assets upon the winding up of the affairs of the company and should be redeemable at the option of the company after one year from the date of issue at par with accrued dividends, it was held that the certificate was a certificate of stock and not a certificate of indebtedness and that plaintiff was a stockholder and not a creditor. In the opinion it was said:

"The plaintiff purchased shares of the original capital stock of the company, received a certificate of stock, cast her fortunes with the company, took with it the risk of its ventures, and depended upon the net earnings of the company for returns upon her investment. She was not guaranteed a seven per cent annual dividend at all events. If there were no net earnings she received nothing and could not, as creditors may do, appropriate capital or general assets to the satisfaction of her claim. The fact that preferred stock had no vote and the corporation reserved the right to retire preferred stock by redeeming it did not change this express feature of the contract. So long as she remained a stockholder her only source of returns was net earnings, and if there were debts of the company she could not share such assets with creditors, in case of dissolution, but was merely preferred over common stockholders in case there were assets to distribute." (p. 384. See, also, *Abrahams v. Medlicott*, 86 Kan. 106, 119 Pac. 375.)

It is argued that the guarantee of dividends expressed in the certificate characterizes the relation of the parties and requires that the transaction should be regarded as a contract to pay money. The guarantee in the certificate is not to be interpreted as an obligation to pay absolutely and unconditionally, but is only a guarantee to pay dividends out of the earnings when profits have accumulated out of which dividends may be paid. Stockholders are classified as common and preferred, and as between the classes preferences are permitted. Neither class, however, is entitled to dividends from any source except from the earnings and profits of the business. The guarantee of dividends inserted in the certificate is no more than a pledge that dividends shall be paid out of funds legally applicable

to dividend purposes, and until there is a surplus of profits dividends cannot be paid to either class of stockholders. The corporation cannot pay dividends out of capital, as to do so would operate as a fraud upon creditors. The effect of such a guaranty was considered in *Lockhart v. Van Alstyne,* 31 Mich. 76, and in an opinion written by Judge Cooley, it was decided that where preferred stock of a corporation was issued in pursuance of a resolution of the directors for the issue of such stock, "upon which a semiannual dividend of five per cent, payable in each year, shall be guaranteed by the company," and where the certificates of such stock contained this amendment, "Five per cent semiannual dividend guaranteed," it was held that under the guarantee the preferred stockholders were entitled to five per cent semiannual dividends when there were profits to pay them, and not otherwise.

In that case it was held:

"An indorsement on certificates of preferred shares in a corporation, issued by order of the directors, as follows: 'Five per cent semiannual dividend guaranteed from September 1, 1872,' signed by the treasurer, is not to be understood as a guarantee that the corporation will pay dividends at all events, but only a guarantee to pay dividends to the holders of certificates in preference to others, when the earnings of the corporation will warrant it.

"A dividend, in the common understanding of the term, when applied to something to be paid by a corporation not insolvent, or in contemplation of dissolution, means a sum which the corporation sets apart from its profits to be divided among its members, and so the word must be understood in such a guarantee." (Syl. ¶¶ 4, 5. See, also, *Miller v. Ratterman,* 47 Ohio St. 141; *Taft v. Railroad Co.,* 8 R. I. 310; *Reagan Bale Co. v. Heuermann,* 149 S. W. 228 [Tex. Civ. App.]; *Spencer v. Smith,* 201 Fed. 647; *Field v. Lamson,* 162 Mass. 388; Fletcher on Corporations, § 3752; 14 C. J. 414, and cases cited.)

The cases taking a contrary view cited by plaintiff are not in line with the rule in this state, nor are they in accord with the great weight of authority.

The provision for the redemption or retirement of the stock was not an unreasonable condition. It was one which the corporation was competent to make, and it did not take from the certificate the character of corporate stock nor convert the certificate into an evidence of indebtedness. (Fletcher on Corporations, § 3644.) Neither did the stipulation that the shares were nonvoting make the certificate illegal or anything other than corporate stock. (*Inscho v. Development Co.,* supra.) The shares sold were not only called by the parties preferred stock, but it is manifest that none of the stipulations in the certificate nor anything in the transaction

are inconsistent with the designation given to the shares by the parties. On the whole it is clear that the certificates cannot be treated as an evidence of indebtedness nor can the plaintiff be regarded as a creditor.

The judgment is affirmed.