## Lincoln Court Realty Company v. Kentucky Title Savings Bank & Trust Company.

(Decided May 4, 1916.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Corporations—Contracts—Ultra Vires.—When all of the stockholders consent for their corporation to enter into an ultra vires contract, neither they nor the corporation for them, can defend a suit on the contract upon the ground that it is ultra vires; the rights of others in and to the assets of the corporation in such a case are not determined.

2. Corporations—Stockholders—Stockbroker.—Section 546 of the Kentucky Statutes requires each private corporation to keep a stock book in which the names of its stockholders are to be recorded and the number of shares each owns, as well as all transfers of shares. If a third party enters into a contract with the corporation by and with the consent of all of the stockholders appearing upon such stock book, and relying upon the truth of the record therein, a transferee of any of the stock who did not have it recorded on the stock book, but who, with knowledge of the facts, permitted the book to show the stock to be held by others, will not be permitted to defend a suit against the corporation made with the assent of all the stockholders appearing upon the stock book, although such contract may be ultra vires.

3. Appeal and Error—Pleading.—Offered pleadings in the trial court will not be considered by this court on appeal unless they are made a part of the record either by an order of court or by a bill of exceptions.

BLAKEY, QUIN & LEWIS for appellant.

HELM BRUCE, OSCAR BADER and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The corporations connected with the transactions out of which this litigation grew are: Kentucky Title Savings Bank & Trust Company (which we shall hereafter refer to as plaintiff); Lincoln Court Realty Company (which we shall hereafter refer to as defendant); Montenegro-Riehm Music Company (which we shall hereafter refer to as the music company), and First National Bank of Louisville (which we shall hereafter refer to as the bank.)

On August 14, 1913, the defendant by its president, J. L. Riehm, executed to the plaintiff two notes for $1,500.00 each, agreeing and promising to pay it on demand, the said sums, and to secure the payment of each of them, the defendant on the same day executed a mortgage to the plaintiff on certain real estate in Louisville, Kentucky. Some time after that, demand was made by the plaintiff of the defendant to pay these notes, and it being refused, this suit was filed on October 25, 1913, to obtain judgment for the debt, and a foreclosure of the lien on the mortgaged real estate to satisfy it. After a long and tedious siege of preparation, in which many motions were entered and numerous pleadings were filed and offered to be filed, the court, upon final submission rendered a judgment in favor of the plaintiff for its debt, interest and costs, and ordered a sale of the mortgaged property to satisfy it. To reverse that judgment, the defendant prosecutes this appeal.

It would render this opinion too long, as well as be of no service, to reiterate here these various motions and pleadings. Boiled down, it may be said that the defenses urged against paying the debt are: (1) Duress; (2) No consideration; (3) *Non est factum,* and (4) that the execution of the notes was *ultra vires* as to the defendant, and it is therefore not liable.

These pleas were each put in issue by reply, and there was also in the reply a plea of estoppel against the defendant relying upon these defenses, and particularly so as to the *ultra vires* one. The testimony developed the following facts: The music company was indebted to the bank in the sum of about $4,500.00, which was considerably past due. It was not able to pay exceding $1,500.00 of this debt, and to obtain the remaining $3,000.00 with which to discharge that debt, the defendant executed the notes and mortgage to the plaintiff, at which time the plaintiff's check for $3,000.00 was given to the defendant. It endorsed the check to the music company, and the music company deposited it in the bank and took credit for the proceeds, thus extinguishing its $4,500.00 indebtedness to the latter. At that time J. L. Riehm was president of the music company and also president of the defendant, and E. L. Swearingen was president of the plaintiff and also president of the bank. The record clearly discloses

that the arrangement just stated, by which the music company should procure the money, was not only agreed to and understood between Swearingen and Riehm, but that it was the result of a conference had between them for the purpose of devising ways and means by which the debt of the music company to the bank could be paid.

As to the first, second, and third defenses, but little need be said. The bank was insistent that the music company should make payment to it and threatened to file suit immediately if this was not done, and to prevent it being done the money was obtained in the manner stated. For a creditor to insist with some force upon the payment of his debt, and to inform his debtor that, unless payment is made, a resort will be had to the only means known to the law by which payment may be enforced, has never, so far as we are able to learn, been characterized as duress. In fact, such actions possess none of the elements of duress. There is nothing in them looking to the unlawful forcing of any one to do that which he is under no obligations to do, legal or otherwise. It is agreed on all sides that the plaintiff issued its check drawn on the bank, and payable to the defendant, for the sum of $3,000.00, which check was deposited in the manner hereinbefore stated. This is sufficient to dispose of the plea of no consideration. The notes were signed with the name of the defendant, by J. L. Riehm, its president, who states in his deposition that the signatures to the notes, as well as the mortgage, are his and were each written by him. So, there is no place in this record for the plea of non est factum.

The defense that the contract was *ultra vires* requires a more extended consideration. It is insisted that the defendant received no part of the proceeds of the notes sued on, nor did it receive any benefits therefrom. That the transaction was merely a borrowing of money by it to pay the debt of another corporation, that of the music company, and that it had no power or authority under its charter to do this, and that the transaction as to it is invalid and void. If the defendant had executed its notes direct to the bank to which the music company owed the debt, and had executed the mortgage to it, there would not be the slightest doubt but that the contract would be *ultra vires*. The question is not so clear, however, when it executed its notes

to a third person from whom it obtained the money, or the check, which is equal to the money, and then used the money, or the check, in the payment of the debt of the music company. In this latter case, the payment of the music company's debt would no doubt be *ultra vires;* but whether or not its transaction with the plaintiff in that case would be so characterized, is not altogether free from doubt. However, in the view we have taken we shall treat the transaction by which the defendant created the debt sued on, as *ultra vires,* and determine whether or not, under the facts proven, this corporation defendant can avail itself of this defense to a suit on the notes.

The defendant was organized in 1906 with a capital stock of $3,000.00, divided into shares of the par value of $100.00 each. The articles of incorporation were signed and acknowledged by J. L. Riehm, H. W. Brock and J. W. Dundon, and it was stated therein, as the law required it should be, that these three were the only stockholders, and that they each owned ten shares of the capital stock. The articles were acknowledged by these three persons and recorded as the law directs. From the time of the organization of the defendant as a corporation, these three persons held annual stockholders' meetings of the company up till December 12, 1913, when, it seems, Riehm and Dundon ceased to be stockholders and A. C. Montenegro and Antonio Montenegro were substituted in their places. During all this time, and up to the day of the change mentioned, the stock book kept by the defendant, pursuant to the requirements of section 546 of the Kentucky Statutes, contained the names of only the three persons mentioned as being stockholders in the defendant company, and this book showed during all that time, that the entire stock of the company was owned by these three, and the other facts required by the section were also shown on that book. From the organization of the company till the day mentioned, Riehm was elected and served as president; Brock was elected and served as secretary and treasurer and Dundon was unmolested in the vice-presidential chair. The only thing which seems to have occurred during this time to mar the tranquility of the management of the affairs of this corporation, is a sudden but unexplained notion which each of these parties took on December 29, 1911, to resign from their re-

spective offices. Accordingly, on that day they each addressed a notice signed by them to the corporation, which notices are identical and are as follows, omitting date:

"Lincoln Court Realty Company, City.

Gentlemen:

"I hereby tender my resignation as (office here stated) and director of the Lincoln Court Realty Co., to take effect on acceptance of same."

It should here be stated that these stockholders at the beginning elected themselves directors, in which capacity they continued to serve, being annually re-elected as long as they were stockholders.

At the time of the borrowing of the money from the plaintiff, there was nothing appearing upon any of the records of the corporation showing anyone to be the owner of any capital stock except the three persons mentioned, nor was there anything to show that any other person had any interest of any character in the corporation, or any of its stock. Before the plaintiff would agree to accept the notes from the defendant and advance to it the proceeds thereof, inquiry was made of Riehm, the president, as to who were the stockholders, as well as directors of defendant, and plaintiff was informed that the stockholders and directors were the parties herein before mentioned. But it declined to make the loan unless it was consented to and approved by all of the directors and all the stockholders of the defendant; whereupon the stockholders adopted a resolution to the effect that the defendant corporation would borrow from the plaintiff the sum of $3,000.00, to be payable on demand, and that the real property which was described therein should be mortgaged to secure it. In the minutes of this meeting it is shown that all the stockholders were present. But it is insisted that Dundon was not aware of the use to which the money was to be put, although it is not denied that he agreed to borrow the money and to mortgage the property to secure it. After this resolution was passed and signed, the loan was effected. The proof shows that the resolution was drawn by an attorney representing the plaintiff and was, perhaps, read by the president of plaintiff before it was passed, but we are not inclined to give to

this the effect that the defendant attaches to it, as will be seen further on in this opinion.

That the attempted resignation of Riehm, Brock and Dundon as officers and directors of the defendant, was of no effect whatever is perfectly apparent. By our statutes, section 551, the directors of such corporations continue such "until their successors are respectively elected and qualified." The only corporate authority who had a right to act upon these alleged resignations was the board of directors, which elected them in the first instance. The three resigners constituted that board, and the communication by which they attempted to resign was in law one addressed to themselves; but it seems that as directors they were not so anxious to make their resignation effectual, by acceptance, as they were as individuals to tender them. At any rate, there was no record made in the books of the corporation as to the tendering of their resignations, nor was there ever any acceptance of them recorded on the corporation books or otherwise. Until there is such an acceptance, they continued to remain directors. (Sec. 551 Ky. Statutes; vol. 10, Cyc. 740). The authority of Thompson on Corporations, section 1090, cited by appellant to the contrary is not applicable, under the facts here, because the resignation in that instance was absolute and to take effect immediately, which very widely differs it from the facts here.

The question then arises, may a corporation when sued upon one of its obligations, which was executed under circumstances as developed in this case, successfully invoke the doctrine of *ultra vires* to defeat a judgment?

The doctrine of *ultra vires* may be broadly stated to be: an act of a corporation beyond the scope of the powers and authority, express or implied, given to it by the sovereignty which creates it. When this is done, under some circumstances, either the corporation or third persons who are interested in its property and who sustain certain relations to it, may object to the contract being performed by the corporation. In other instances, such persons, if sustaining the proper relation to the corporation, may require it to interpose the *ultra vires* acts as a defense to an action on such contracts. All this is allowed by the law, not because of any inherent viciousness of the *ultra vires* acts, or be-

cause they are against any particular public policy, but because the assets of the corporation, of whatever nature, are a trust fund held by it for the benefit of its shareholders, and, in some jurisdictions under some circumstances, for the benefit of its creditors; and to prevent the corporation in its capacity as *quasi* trustee from dissipating these assets, and imperiling the interest of its shareholders, and squandering its assets to the detriment of its creditors, the law allows this defense to be made. It will be seen that one class of *cestui que* trust, for the benefit of which the doctrine exists, is the stockholders in the corporation. If for any cause, all of the shareholders in a corporation are not entitled to this defense, it will necessarily result that their trustee could not invoke it for their benefit. This is not only consonant with reason and justice, but it is so held by all the authorities which we have been able to find. It is stated in Cook on Corporations, fifth edition, section 775, page 2081, thus: "A stockholder who assents to a guaranty cannot afterwards attack it on the ground that the corporation had no power to enter into it." And in a note: "If all the parties assent to a guaranty by the company of bonds and stock in another company owned by directors of the first company, such guaranty, being in consideration of a lease, will not be set aside." (Barr v. N. Y., Etc. R. R., 125 N. Y. 263). Again in the same note: "Where an agricultural society guarantees the bonds of a street railway, a participating stockholder in such society cannot afterwards object." (Thompson v. Lambert, 44 Iowa 239; Martin v. Niagara, Etc. Co., 122 N. Y. 165.)

From this it is manifest that if a consenting stockholder cannot object, then if all of them consent, none of them can object, nor can they insist upon their corporation doing for them as their trustee that which, in law, they are not permitted to do for themselves. To hold otherwise would be an absurdity which the law justifiably abhors. Furthermore, in Cook on Stockholders, seventh edition, volume 1, section 3, page 16, it is said: "The old theory of a corporation was that it could not legally do anything in excess of its express or implied powers, but the modern view is that a private corporation may, if all its stockholders assent and if creditors are paid."

The question under consideration is very exhaustively as well as forcefully considered by the highest court of New Jersey, in the case of Perkins, et al. v. Trinity Realty Co., 69 N. J. Eq. 723, 61 Atlantic 167. The facts in that case are almost identical with those in the instant case. The appellee in that case, being a corporation, executed a mortgage on some of its real property and obtained thereby money with which it paid the debt of another corporation, and with which it had no connection. The mortgage, as well as the obligations which it secured, were executed directly to the creditor of the debtor corporation, and this was done, not only with the knowledge of the obligees in the notes and mortgage, but after a resolution had been passed by all the stockholders authorizing the appellee to assume the debt.

This was more clearly an *ultra vires* contract than the one we are considering, for reasons stated in the first part of this opinion. The court, after reciting the facts, and adjudging the transaction to be *ultra vires,* continues: "But since it is not shown that there are any creditors, and no question of public policy intervenes, and every stockholder assented to this disposition of the company's property, I find that this mortgage given for a valuable consideration, should not be declared invalid at the instance of this defendant (the corporation)." And finally the court sums up its conclusion in the following language:

"When the rights of the State, the public, and creditors are eliminated, and only the rights of stockholders are involved, the form of the fictional body termed a 'corporation' does not hamper the court in the least in dealing with the rights of the parties. And that which the individuals composing the corporation might do, and will be held to have done among themselves, will be dealt with without regard to the immaterial fact that they were members of a fictional body. No citation of cases is necessary to establish the well-settled doctrine that courts of equity will disregard the corporate form where justice requires it and its retention is not needed to protect some interest requiring protection. To permit stockholders of corporations to unanimously make a disposition of the corporate property where no one else's rights are in any way prejudiced, and afterwards to repudiate their action upon the ground that it

was beyond the power of the fictional body to do the act, could serve no useful purpose, and would be merely available in aid of fraud. To hold that, under such circumstances, those who have unanimously done the act cannot repudiate it, is certainly consonant with good morals and fair dealings, and violates no principle which is necessary to the protection of the rights of those concerned in and with corporations. In cases where stockholders have all assented to corporate action, and no rights of the State or creditors intervene, the doctrine of estoppel is fully applicable, and the plea of *ultra vires* is unavailing. Text-writers and cases in other jurisdictions are in accord with this principle. Taylor on Corporations, 266 et seq.; McCampbell v. Fountain R. R. Co. (Tenn. 1903), 77 S. W. 1070; Martin v. Niagara Falls Paper Co., 122 N. Y. 165; 25 N. E. 303; Holmes v. Williard, 125 N. Y. 75; 25 N. E. 1083; 11 L. R. A. 170.''

There is nothing to be found in the opinions of this court in conflict with this rule; on the contrary, statements in various opinions by it strongly uphold the principle. The case of Kenyon Realty Co. v. National Deposit Bank, 140 Ky. 133, had under consideration this question. There the president of the realty company executed the note of the corporation to the National Deposit Bank in payment of his individual debt. In a suit against the realty company to enforce the collection of the note, the plea of *ultra vires* was relied on and upheld by this court, only because it was shown, that one of the stockholders had not consented to the execution of the note, although the other two had.

It is broadly intimated in the opinion that if the three stockholders, being all of them, had consented, the plea would have been unavailable. The shareholders in that defendant corporation were James H. Parrish, H. K. Cole and Mrs. Jesse M. Parrish. The first two were the consenting stockholders, and Mrs. Parrish was the non-consenting one. In considering the case this court said: ''The corporation itself took no action either by its board of directors or by its stockholders as such; and while Cole and Parrish owned a majority of the stock, they were the only stockholders who knew the facts, and there was at least one stockholder who knew nothing about the matter and was in nowise consulted.''

In the instant case the defendant corporation *did* act in the matter, not only by its officers, but also by its directors, and lastly, by all of its stockholders; thereby creating such a state of facts as this court, in the case, *supra,* clearly indicated, would have cured the defect therein being considered. The fact that the plaintiff in the case, now before us, may have had knowledge as to the use that the defendant intended to make of the proceeds of the note sued on, under the facts disclosed by the record, and the authorities, *supra,* can have no detrimental bearing on its rights. We, therefore, hold that where a contract is *ultra vires,* and does not conflict with any interest of the State, and is not against any principle of public policy, and where only the interest of the stockholders are involved, the corporation cannot rely upon this defense, nor can it be made to do so by the stockholders when all of them consented for the contract to be made.

It is insisted, however, and the record shows it to be a fact, that neither Riehm, Brock, nor Dundon, ever owned any stock in the defendant corporation. That immediately upon the organization of the corporation, the stock was issued to these three in the proportions herein stated, and they immediately endorsed the stock in blank and delivered same to Dr. A. C. Montenegro, and that he held the stock from that time on, pledging it, however, to some of his creditors as collateral security for debts which he owed them. Neither he nor such creditors made any effort to require the books of the corporation to show any of these facts. On the contrary, they permitted the books to continue to show that the stock was held by Riehm, Brock and Dundon. It certainly would require no authorities, especially in view of the section of the statute, *supra,* requiring such fact to be recorded upon the books of the corporation, to show that Montenegro, as well as his creditors, would be estopped to question the acts of the stockholders, who are shown to be such on the book required to be kept for that purpose; especially so as against one who relied upon the information which the book disclosed. See Spalding v. Paine's Admr., 5 K. L. R. 391.

It is insisted that Mr. Swearingen, the president of the plaintiff, knew at the time of the execution of the notes that Montenegro was the actual owner of the stock, or at any rate, a portion of it. This is attempted

to be shown by the pleadings in a former suit between the plaintiff herein and the defendant, in which it is claimed that it was disclosed that Mentenegro was a large stockholder in the defendant. It is also said that at least two witnesses, about the time of the pendency of that suit, informed Mr. Swearingen of the fact that Montenegro did own such stock. These transactions occurred in 1909, and Mr. Swearingen now says, in giving his testimony in this case, that he has no recollection whatever in regard to this matter. However, in the view which we take, it would make no difference. The information upon which he acted in this case was confined to what the records of the corporation showed at the time. It might be a fact that he learned in 1909 that Montenegro was a stockholder in the defendant, yet there is no presumption that he continued to be such, nor that he was such five years thereafter. The knowledge which affects the rights of the plaintiff must relate to the facts existing at the time of entering into the transaction complained of. However this may be, the rights of Montenegro and his pledgees, as well as those of a creditor of defendant (Louisville Trust Co.), are attempted to be manifested by pleadings offered by them some four or five months after the filing of the answer. These pleadings were not permitted to be filed by the court. They were not made a part of the record by an order of the court, nor are they made such by a bill of exceptions, and cannot, therefore, under a well-settled rule of practice, be considered by us; Sutton v. Pollard, 13 K. L. R. 85; McCain v. L. & N. R. Co., 31 Ky. L. R. 809; Stafford v. Dyer, 19 K. L. R. 155; Graves' Committee v. Lyons, 166 Ky. 446; Roemer v. Mottley, 161 Ky. 316; Gorrell v. Florida Farmers' Co., 165 Ky. 530. This ruling applies to equity as well as ordinary cases. If, however, we were permitted to consider the pleadings offered by the Louisville Trust Company, we are not altogether convinced that it, being a simple creditor, could rely on the *ultra vires* nature of this contract. In order to do so, it would certainly have to show that the defendant at the time of making it was insolvent or that the contract itself made it so, thus imperiling the rights of its creditors. This it does not show by the offered pleading.

So that whatever view we may take of the record as here presented, we are convinced of the correctness of the judgment below, and it is therefore affirmed.