**TWEEDIE FOOTWEAR CORPORATION
v. FONVILLE et al.**

No. 12306.

Court of Civil Appeals of Texas. Dallas.

March 5, 1938.

Rehearing Denied April 2, 1938.

Fred J. Dudley, of Dallas, for plaintiff in error.

Chas. Romick and Bromberg, Leftwich, Carrington & Gowan, all of Dallas, and

Walker & Walker, of Cleburne, for defendants in error.

LOONEY, Justice.

The events producing the litigation that resulted in the judgment appealed from, in so far as pertinent to our present inquiry, are substantially these: The Jolesch Shoe Company (Texas corporation) was a wholesale and retail dealer in shoes, maintaining its wholesale or jobbing house in the city of Dallas, and operated about 16 retail stores in different towns and cities of the state. Mr. Isaac Jolesch, its president, with the view of obtaining additional capital with which to enlarge and better the condition of its business, consulted Mr. R. L. Thornton, president of the Mercantile Trust & Savings Bank, of the city of Dallas, in regard to the fiscal questions involved, resulting in a tentative agreement on a plan outlined in a letter, dated May 25, 1928, by Mr. Thornton to Jolesch, which contemplated an amendment to the charter of the company increasing its capital stock from $185,000 to $285,000, the increase—$100,000—to be preferred stock, with certain preferential rights over common stock, and to be secured or protected by a policy of insurance for $50,000 on the life of Mr. Jolesch, providing that, in the event of his death, the proceeds of the policy would be used to retire the preferred stock. On behalf of his bank, Mr. Thornton proposed to take over the entire issue of preferred stock at $95 per share (the par value being $100), and, through its securities department, sell the same. The letter of Mr. Thornton mentions other matters not deemed material.

On June 8, 1928, the plan, as outlined in the letter of Mr. Thornton, was approved by the stockholders and directors of the shoe company; the contemplated amendment to the charter, increasing its capital stock, was authorized; and the directors were authorized to procure the issuance of a policy of insurance for $50,000 on the life of Mr. Jolesch, for the benefit, primarily, of the holders of the preferred stock, providing that, in the event of the death of Mr. Jolesch before the stock was retired, the proceeds of the policy, when collected, or so much thereof as required, would be used to retire the outstanding preferred stock; and that, if insufficient to retire all the outstanding preferred stock, the fund should be applied pro rata. In due time the charter of the shoe company was amended, Mr. Isaac Jolesch subscrib-ed for the entire issue of preferred stock, and, on February 29, 1928, transferred same to Mr. Thornton, president of the bank, pursuant to the arrangements previously made between the shoe company and the Mercantile Trust & Savings Bank, through whose securities department the stock was sold; all of which being outstanding at the beginning of the present litigation, except 20 shares previously retired out of earnings, leaving a total of 980 shares, of the total par value of $98,000.

On June 30, 1928, after the beginning of the above proceedings but before the issuance of the stock, a policy of insurance for $50,000 was issued by the State Life Insurance Company of Indianapolis, Ind., on the life of Isaac Jolesch, taken out pursuant to and in compliance with the arrangement between the bank and the Jolesch Shoe Company, in which the company was named beneficiary. On October 10, 1928, after the issuance of the stock, as authorized by a provision of the policy, the beneficiary was changed, the Mercantile Trust & Savings Bank was named beneficiary, as trustee for the preferred stockholders; and later, on February 2, 1933, the beneficiary was again changed, the Mercantile Bank & Trust Company of Texas was named beneficiary, as trustee, the name of the bank in the meantime having been changed by an amendment to its charter. The premiums on said policy, over $10,000, were paid by the Shoe Company out of its surplus.

On February 4, 1933, prior to the death of Mr. Jolesch, the Jolesch Shoe Company was placed in the hands of a receiver by the Fourteenth district court of Dallas county, at the suit of a creditor. The receivership did not result from the insolvency of defendant company. The record discloses that it was solvent throughout all the transactions mentioned and, after the receivership, the company was found by the court to be solvent, as shown by an order to that effect entered in its minutes. The court authorized the receiver to continue the business of the Shoe Company, with full power and authority to buy and sell for cash or on credit, as deemed advisable by the receiver, and particularly to carry out and perform all contracts and obligations of defendant company; to enter into new contracts, incidental to the operation of the business, as deemed for the best interest of the estate, and to make such payments and disbursements out of

the assets deemed proper for the preservation and operation of the business.

After the death of Mr. Isaac Jolesch, the Mercantile National Bank of Texas, as trustee (the latter having succeeded the Mercantile Bank & Trust Company of Texas—that is, the state bank having become nationalized) in due time filed appropriate proof of death, collected the amount of insurance—$50,000—and, on December 9, 1935, in its capacity as trustee, begun in the receivership suit the present proceedings, in the nature of a bill of interpleader, asking for instructions as to the disposition of the $50,000 proceeds of the policy; the same being in the nature of a class suit, to which certain creditors of the defendant company were made parties, as representative of that class, among others, the Tweedie Footwear Corporation, plaintiff in error; also, representatives of the class comprising holders of the preferred stock of the Jolesch Shoe Company were brought in as defendants; also, representatives of the class comprising the creditors of the estate of Isàac Jolesch, and representatives of the class comprising the heirs and beneficiaries of the estate of Isaac Jolesch, were made defendants. The intervener also alleged that it held 20 shares of the preferred stock as trustee for Eleanor W. Nance; that it owned in its own right 381 shares of the preferred stock; and that it was a creditor of the Jolesch Shoe Company, and a creditor of the estate of Isaac Jolesch, deceased.

The heirs and beneficiaries of the estate of Isaac Jolesch filed disclaimers; the other parties named as defendants filed pleadings, setting up their respective claims to the fund and the claims of those belonging to that class. The Mercantile National Bank at Dallas, in its own behalf, set up its claim as a preferred stockholder, and as a creditor of both the Shoe Company and the estate of Isaac Jolesch; also as trustee for Eleanor W. Nance, owner of 20 shares of the preferred stock.

On December 30, 1935, the trial court took jurisdiction of the $50,000 fund tendered by the bank, as trustee, and directed that same be held by the bank as an officer of the court, subject to final orders, and, in same order, found that the parties who had filed claims to the fund, either as creditors of the Jolesch Shoe Company, as holders of its preferred stock, or as creditors, heirs, or beneficiaries of the estate of Isaac Jolesch, deceased, were fairly representative of each of said classes, that the suit was properly brought, and that each class was properly before the court.

The record discloses that plaintiff in error did not sell goods or extend credit to the Jolesch Shoe Company until in March, 1932, more than three years after the consummation of the transactions called in question. In its answer to the plea of intervention by the bank, plaintiff in error answered for itself and as representative of the creditor class, and, in addition, filed on its own behalf a cross-action against certain parties to the suit, claiming a preferred right to the insurance money, to the extent of its claim—to wit, $4,296.16—against the Jolesch Shoe Company.

The case was tried without a jury, resulting in judgment to the effect that the proceeds of the life policy were held in trust for the benefit of the owners of the preferred stock of the Jolesch Shoe Company; that no part of same was an asset of the Company nor its receiver, nor any creditor of the company had any right, title, or interest in or to any part of said fund; therefore, the depositary, the Mercantile National Bank at Dallas, was directed, after paying certain taxes and expenses, to pay the holders of the preferred stock who were before the court their pro rata part of said fund, respectively, and to hold the remainder until other holders of the preferred stock (representing 455½ shares) could intervene and establish their rights in and to the portion of the fund remaining in the hands of the depositary. Findings of fact and conclusions of law were not requested by either party or filed by the court. The Tweedie Footwear Corporation alone appealed by writ of error.

During the last term of court, certain of the defendants in error filed motions to dismiss the writ of error; also to strike the statement of facts. These motions were considered and overruled on June 12, 1937. The same questions are again presented in briefs, but in view of the disposition which will be made of the case, we do not deem it necessary to re-examine the questions presented.

The first three propositions urged by plaintiff in error will be grouped; they are: (1) That the purchase by Jolesch Shoe Company of the policy of insurance

on the life of its president for the benefit of the preferred stockholders was ultra vires and void, therefore the trial court should have awarded the proceeds of the policy to the creditors of the Shoe Company, subject to their right, as between themselves, to establish priorities; (2) that the arrangement whereby the bank obtained a profit of $5,000 for selling the preferred stock and handling the transaction was illegal, therefore, the court erred in not requiring the bank to repay or account for said fund; and (3) that the Shoe Company having paid $10,209.37 as premiums on the policy, its creditors were entitled to have their claims paid, to that extent, out of the proceeds of the policy, therefore, the court erred in holding that plaintiff in error had no right to any portion of said fund. These propositions, in our opinion, relate to different phases of the same transaction—that is, the purchase of the policy, payment of premiums thereon with company funds, and the profit or fee of $5,000 allowed the bank for handling the transaction, are bottomed on the central contention that the transaction as a whole, including these elements, was ultra vires and void.

While it is true that the statutes of this state neither expressly authorize nor prohibit the issuance of preferred stock by corporations, yet we do not think the issuance of such stock is either impliedly prohibited or against public policy. In the instant case, the preferred stock was issued in good faith, at the instance of the stockholders and directors of the Jolesch Shoe Company, as a means of accomplishing a legitimate end—that is, the acquisition of capital with which to enlarge the business of the corporation, in order to more effectually accomplish the purpose for which it was created. At the time the insurance policy was taken out, and during the whole period of time involved, the company was perfectly solvent, and the premiums thereon were paid from its surplus. The owners of the preferred stock purchased on the assurance that the policy was for their benefit, and that, in the event of the death of Mr. Jolesch, the proceeds thereof would be used to retire the stock. The consideration paid for the stock was received by the Shoe Company and used for the enlargement of its business. In view of this situation, we do not think it can be correctly said that, either in taking out the policy, in paying the premiums thereon, or in allowing the bank a commission of $5,000 for handling the transaction, the company misused its means and assets within the meaning of article 1349, R.S. Being a subsequent creditor of the Shoe Company, more than three years having elapsed after the consummation of the transactions called in question before the Shoe Company became indebted to plaintiff in error, we do not think it is in a favorable position to question the validity of these transactions.

We recognize as correct the doctrine announced in Reagan Co. v. Heuermann, Tex.Civ.App., 149 S.W. 228, to the effect that holders of preferred stock cannot assert a claim to the assets of a corporation superior to the rights of its creditors. However, that doctrine has no application here, because the fund in question (proceeds of policy) was never an asset of the corporation. The insurable interest in the life of Isaac Jolesch did not belong to the corporation, nor was the policy an item of property, but simply the evidence of a contract providing that, upon the death of Isaac Jolesch, the amount thereof ($50,000), when collected, should be paid to the Mercantile National Bank at Dallas, as trustee for the benefit of holders of the preferred stock; therefore, the fund belonged, not to the corporation, but to the named beneficiaries—that is, the bank as trustee for the holders of preferred stock.

In Martin v. McAllister, 94 Tex. 567, 63 S.W. 624, 625, 56 L.R.A. 585, a similar situation was presented, to the Supreme Court, with reference to which Judge Brown said: "A policy of insurance is not a piece of property. It is the evidence of a contract; the contract being that a certain sum of money will be paid, upon the happening of a certain event, to a particular person named in the policy, or who may be the legal holder thereof." Further along in the opinion, Judge Brown said: "The right to the proceeds of the policy, whether upon the life of the wife in favor of the husband, or upon the life of the husband in favor of the wife, rests upon the same principle, which is that the proceeds of the policy belong to the person named as payee, and it becomes property upon the contingency of the death of the insured in the lifetime of the payee. Therefore, as it could not become the property of the husband or the wife during the lifetime of both of them, it cannot be held to be community property, and is therefore the separate property of the one to whom it is made payable." Also, see San Jacinto Bldg. v.

425

Brown, Tex.Civ.App., 79 S.W.2d 164, writ refused; Central Nat. Bank v. Hume, 128 U.S. 195, 9 S.Ct. 41, 45, 32 L.Ed. 370, 371. In the latter case, Chief Justice Fuller, speaking for the Supreme Court, used the following pertinent language: "Conceding, then, in the case in hand, that Hume paid the premiums out of his own money, when insolvent, yet, as Mrs. Hume and the children survived him, and the contracts covered their insurable interest, it is difficult to see . upon what ground the creditors, or the administrators as representing them, can take away from these dependent ones that which was expressly secured to them, in the event of the death of their natural supporter. The interest insured was neither the debtor's nor his creditors'. The contracts were not payable to the debtor, or his representatives, or his creditors. No fraud on the part of the wife, or the children, or the insurance company is pretended. In no sense was there any gift or transfer of the debtor's property, unless the amounts paid as premiums are to be held to constitute such gift or transfer. * * * But even though Hume paid this money out of his own funds when insolvent, and if such payment were within the Statute of Elizabeth, this would not give the creditors any interest in the proceeds of the policies, which belonged to the beneficiaries for the reasons already stated."

In similar situations, courts the country over have announced the doctrine that a solvent corporation has the right, with the consent of its stockholders and directors, to pay premiums on life policies issued for various purposes, some, remotely if at all, connected with the business of the corporation. In Oliver v. Northwestern, etc., Co., D.C., 2 F.Supp. 266, 267, the court said: "A solvent corporation has the right to pay premiums on life insurance policies (which in this case were in the nature of dividends) with the consent of all the stockholders, providing that such payments do not render the corporation insolvent." In Sweet v. Lang, 8 Cir., 14 F.2d 762, 766, presenting a similar group of facts, the Circuit Court said: "A solvent corporation may deal with its assets and dispose of them in any way it wishes with the consent of its directors and stockholders, and creditors have no right to complain if the corporation is not thereby rendered insolvent." Another pertinent case is that of Little v. Garabrant et al., 90 Hun 404, 35 N.Y.S. 689, 692, affirmed by the Supreme Court, 153 N.Y. 661, 48 N.E. 1105. The receiver of the corporation sued the insurance company to have certain policies issued on the life of an officer of the company, payable to his wife, declared the property of the receiver's estate. At the time the policies were issued, the corporation was solvent, and all of its stockholders assented to the use of its funds to pay the premiums. The court denied the receiver recovery, saying: "The receiver, it is true, represents not only the corporation, but the creditors and stockholders as well, but, as trustee for the corporation and stockholders, he stands in no better position to enforce this claim than did they. In their behalf, the rights of creditors not intervening, he could not maintain an action which the corporation would be prevented from maintaining were it in existence. In his capacity as trustee for the corporation he would not be precluded from a successful prosecution of the action because of the assent of all of the stockholders to the use of its funds for purposes outside of the business of the corporation, provided it were the fact that the corporation was insolvent at the time such payments were made. But, as was truly said at special term, there is no evidence that the corporation was insolvent at the time of the making of the several payments, nor does it appear that the indebtedness to any of the present creditors of the corporation arose prior to such payments." Also, see Ratcliff v. Clendenin, 6 Cir., 232 F. 61; Watts v. Gordon, 127 Tenn. 96, 153 S.W. 483; Oliver v. Safe Deposit Co., 315 Pa. 552, 173 A. 281; New Hampshire Savings Bank v. Richey, 8 Cir., 121 F. 956; Hall v. Crawford, 11 S.W.2d 804, 805, in which the Texarkana Court of Civil Appeals cited with approval Watts v. Gordon, Sweet v. Lang, and Little v. Garabrant, supra; Lincoln, etc., Co. v. Kentucky Title, etc., Co., 169 Ky. 840, 185 S.W. 156.

So we conclude that the Jolesch Shoe Company, being solvent at the time, had the legal right, with the approval of its stockholders and directors, to purchase the policy on the life of its president for the benefit of its preferred stockholders, and pay the premiums thereon out of its surplus; also to pay the Mercantile National Bank $5,000 to cover its expenses and as compensation for selling the issue of preferred stock; and that plaintiff in error, being a subsequent creditor, is in no position to question the legality of these transactions.

■ As beforementioned, the contracts and arrangements entered into by the Shoe Company, the validity of which is called in question, were executed and completed transactions more than three years before plaintiff in error extended credit to, or became a creditor of, the Shoe Company; therefore, if it could be correctly said that these contracts and arrangements were in law ultra vires, yet rights acquired thereunder will not be disturbed by the courts. This well-settled doctrine was announced with full citation of authorities by the Court of Civil Appeals in San Antonio, etc., Co. v. Sanger, 151 S.W. 1104, 1106.

■ Plaintiff in error argues in its brief that, in disposing of the preferred stock in question, the Blue Sky Law, Vernon's Ann.Civ.St. art. 579 et seq., was violated. This issue was neither presented by pleading nor supported by proof. The burden rested upon plaintiff in error to allege and prove, if it be true, that the Blue Sky Law was not complied with. Suddath v. Blanchard, 39 Ga.App. 262, 146 S.E. 798; First Nat. Bank v. First State Bank, Tex.Com.App., 291 S.W. 206. However, we think the question raised purely academic, as plaintiff in error, being simply a creditor, is in no position to take advantage of the violation of the statute, even if its violation had been established.

■ Based upon the contention that Isaac Jolesch, president of the Shoe Company, represented to its creditors through certain credit agencies that the life policy in question was payable to the Shoe Company as beneficiary, plaintiff in error contends that the preferred stockholders are estopped to deny that the proceeds of the policy belonged to the Shoe Company. The facts bearing on this question are these: Although plaintiff in error extended credit to the Shoe Company in March, 1932, it did not request credit agencies for statements in regard to the financial standing of the Shoe Company until October following. Among others, Dunn & Co. and Bradstreet furnished statements, the earliest received being on October 3, 1932, showing substantially that, among other assets of the Shoe Company, the surrender value of a life insurance policy, to wit, $4,258; also a recital in the statement to the effect that the corporation (Shoe Company) carried a $50,000 life policy on its president payable to the corporation; the information, as disclosed in these statements purportedly originated with and was furnished to the credit agencies by Mr. Isaac Jolesch, president of the Shoe Company.

It may be inferred from recitals in these statements that proof could have been made that the data upon which they were based was furnished by Isaac Jolesch; but no proof was offered to that effect. However, if that fact had been established, it was not shown that either the bank or any preferred stockholder authorized Jolesch to make any such statement; or was it shown that either of the credit agencies, in furnishing the financial statement to plaintiff in error, represented the Jolesch Shoe Company, the bank, or either of the preferred stockholders. Prior to the reception of these statements, plaintiff in error did not know of the existence or the provisions of the policy of insurance on the life of Isaac Jolesch, and thereafter did not extend as large a credit to the Shoe Company as theretofore. Hence, if deemed necessary to sustain the judgment, we think the facts justify the conclusion that plaintiff in error, in extending credit to the Shoe Company, did not rely upon the information furnished by the credit agencies, but acted, as theretofore, upon the general good financial standing of the Shoe Company. For reasons stated, we are of opinion that plaintiff in error failed to establish its plea of estoppel.

But aside from all other questions discussed, we are of opinion that the appeal of plaintiff in error and each proposition urged therein must be denied, for the basic reason that the claim it is now asserting is not owing by the Shoe Company, but is the balance due by the receiver. The court authorized the receiver to continue the business, to purchase and sell, execute contracts, pay debts, etc., as fully as the Shoe Company could have done if the receiver had not been appointed. Plaintiff in error sold goods to the receiver and accepted payments from him just as it had previously dealt with the Shoe Company; the account, as shown by the statement attached as an exhibit to the deposition of Mr. C. S. Rose, credit manager of plaintiff in error, was a continuous one, beginning with the Shoe Company in March 8, 1932, and ending with the receiver in November, 1934; debits and credits were entered after the appointment of the receiver just as had been done

prior thereto; in other words, the account was not interrupted when the receiver was appointed. At the date of the receivership (January, 1933) the Shoe Company was indebted to plaintiff in error in the sum of about $8,000; and thereafter, various purchases were made by the receiver, and payments approximating $23,000 in cash were made by him, besides several thousand dollars credits allowed for goods returned, discounts, etc., thus showing that the business under the receiver largely overpaid and extinguished the amount due by the Shoe Company at the inception of the receivership. These credits, as shown by plaintiff in error's own statement, appear to have been so applied as to discharge the debts or items of the account according to their priorities, which, in the absence of anything to the contrary, is precisely the application the law would have made. So we think it conclusively appears that the claim now urged by plaintiff in error, to wit, $4,296.16, is the balance due it by the receiver.

For each and all the reasons hereinbefore stated, the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

'Near the close of the original opinion filed in this case, we said: "But aside from all other questions discussed, we are of opinion that the appeal of plaintiff in error and each proposition urged therein must be denied, for the basic reason that the claim it is now asserting is not owing by the Shoe Company, but is the balance due by the receiver." This statement was followed by a discussion based upon data revealed by the record we had before us.

Seizing upon the language just quoted, appellant, in the fifth assignment of its motion for rehearing, insists that its motion should be sustained and the judgment below reversed, "Because the court (this court), as a matter of law, erred in not reversing the judgment of the trial court and directing payment to plaintiff in error, having found the debt to be that of the receiver." And again, referring to same matter, appellant says: "This court has found the debt of plaintiff in error to be that of the receiver—with that finding he (we) have no complaint. Irrespective of what debt it is, as we see it, the situation is the same."

What we said with reference to the debt being against the receiver was not neces-sary to a decision of the case; for reasons previously stated, neither the Shoe Company nor the receiver nor any creditor of the Shoe Company had any right in or to the proceeds of the policy of the insurance, hence, in no event, is plaintiff in error entitled to satisfaction out of said fund, whether as creditor of the Shoe Company or of the receiver.

The affairs of the receivership were not before us for adjudication, and we did not intend the reference to be a finding of fact against the receiver, as he was not a party to the writ of error; our reference to the matter being simply an argument based upon the record before us, which seemingly showed that plaintiff in error's claim was the balance due by the receiver.

With this explanation and limitation of the language of the original opinion, under discussion, and finding no reason to change or alter our decision, the motion by plaintiff in error for rehearing and to certify is overruled; and the motions for rehearing by defendants in error are also overruled.