# Woodford Shannon's Co-Executors v. Shannon Spring Bed Mfg. Co.

# Woodford Shannon's Co-Executors v. Marcum et al.

July 28, 1950

As modified on denial of rehearing October 17, 1950.

W. Scott Miller, Judge.

464

Duncan, Humphrey, Peabody & Oldham, Richard C. Oldham, Andrew W. Duncan, for appellants.

Woodward, Hobson & Fulton, R. P. Hobson, John P. Sandidge, for appellees.

VAN SANT, COMMISSIONER—Judgment affirmed.

The suit was instituted by the Shannon Spring Bed Manufacturing Company, Incorporated, to require appellants' decedent, Woodford Shannon, to surrender for redemption 85 shares of Preferred Debenture Stock and 231 shares of Preferred Stock of the Corporation. Mr. Shannon surrendered the Preferred and received therefor the full redemption value. He refused to surrender the 85 shares of Preferred Debentures. The case was referred to the Master Commissioner and consonant with his findings, judgment entered for the corporation. Appellees, Marcum and D. G. Shannon, were made parties by cross-petition of Woodford Shannon. The Chancellor dismissed the cross-petition. Separate appeals were filed by Woodford Shannon against, (1) the Corporation, and (2) Marcum and D. G. Shannon, jointly. Appellant died during the pendency of the appeal, which has been revived in the name of his co-executors.

Appellant contends that the court erred: (1) in requiring him to surrender his stock for redemption because the right of redemption reserved in the resolutions authorizing the issuance of the stock and incorporated in the stock certificates was ultra vires; (2) in adopting the Commissioner's finding that appellant had failed to prove an alleged "side" contract to the effect that the Corporation would not redeem his stock in his lifetime, and that as holder of the Preferred Debentures he would be entitled to participate with Common Stockholders in the distribution of dividends accumulated from earnings; and (3) the Corporation is not entitled to equitable relief because it did not come into court with clean hands. The second and third contentions require a summary statement of transactions between the parties commencing with a joint meeting of the Stockholders and the Board of Directors held on the 25th day of April, 1940.

At that meeting, all of the stockholders, who like-

wise were directors of the company, were present. The purpose of the meeting was to revise the capital structure of the Corporation "in order to eliminate certain fixed charges and overhead expense," and to place the Corporation in position to provide for additional financing in the event the occasion should arise. Previous to that meeting, there was an authorized issue of 200 shares of Preferred Stock of the par value of $100 per share and 450 shares of Common Stock of the par value of $100 per share. At that meeting, a resolution was adopted unanimously amending the Articles of Incorporation by reducing the 450 shares of Common Stock to 150 shares and authorizing an issue of 300 shares of Preferred Debenture Stock of the par value of $100 per share. Thus the total capital stock outstanding at the conclusion of that meeting consisted of 150 shares of Common Stock of the total par value of $15,000.00, 200 shares of 6 per cent Preferred Stock of the total par value of $20,000.00, and 300 shares of 6 per cent Preferred Debenture Stock of the total par value of $30,-000.00. The Debenture stock was for a term of twenty years from the 30th day of March, 1940, and the resolution authorizing its issuance contained the following language: "In the event of liquidation of this Company voluntary or otherwise, after the demands of the Preferred Stock shall have been paid, the Preferred Debenture Stock shall be entitled to receive out of the remaining assets of the Company payment in full with all accumulated unpaid interest before the holders of the Common Stock shall be entitled to receive any part of such assets in liquidation, but upon such liquidation when such Preferred Debenture Stock has been paid in par with accumulated interest, it shall have no right to participate further in the distribution of such assets: Said Preferred Debenture Stock shall be redeemable in whole or in part at the end of any interest period."

Identical language was printed on each of the certificates of Preferred Debenture Stock. The resolution above referred to and partly quoted was drafted by Woodford Shannon, and the quoted part of the resolution was caused to be placed on the stock certificates by him. Shortly after the April meeting Mr. Shannon consulted a tax accountant, and, pursuant to conclusions arrived at by the former as a result of the conference, and at his suggestion, a joint meeting of the Share-

holders and Directors of the Corporation was held on the 23rd day of May, 1940. All of the shareholders and directors; viz., Woodford Shannon, A. Lee Marcum, and Donald G. Shannon were present and participated in the deliberations of the meeting at which a resolution was adopted unanimously. Among other things, the resolution provided that, because the minutes of the joint meeting of April 25, 1940 recited that the Preferred Debenture Stock should be entitled, after the payment of 6 per cent dividends upon the Common Stock, to a dividend equal to any additional or extra dividend that may be declared upon the Common Stock from the earnings of the company for any year, and that such conditional dividend upon Preferred Debenture Stock would cause such stock to have the status of Preferred Stock, and since it was definitely intended that such Preferred Debenture Stock should not have the status of Preferred Stock, the stockholders agreed to cancel their holdings of Common Stock in proportionate amounts up to the sum of $28,000.00 and Mr. Woodford Shannon agreed to accept Preferred Debenture Stock in the amount of $8,500.00 (being the stock in dispute) in exchange for the cancellation of a like amount of Common Stock. The resolution then authorized the issuance of 85 shares of Preferred Debenture Stock and 150 additional shares of such stock to Woodford Shannon; 42½ shares of Common Stock to A. Lee Marcum; 42½ shares of Common Stock to Donald G. Shannon, but the voting rights on two shares of Common Stock issued to Marcum and a like amount issued to Shannon were assigned to Woodford Shannon as long as he remained the owner of the Preferred Debenture Stock issued to him. Pursuant to that resolution, the shareholders cancelled their holdings of Common Stock in the following amounts: Woodford Shannon, $14,000.00; A. Lee Marcum, $7,000.00; Donald G. Shannon, $7,000.00.

Appellants' first contention is that their decedent was not required to surrender his stock for redemption because the Articles of Incorporation did not specifically authorize the Corporation to redeem, therefore, the resolution adopted at the meetings of April 25th and May 23rd, 1940, as well as the conditions printed on the stock certificates, were ultra vires and of no effect. Such contention in like circumstance invariably has been rejected whenever the question has been presented to this court.

One of the late cases so holding is Jarett v. Adolph, 266 Ky. 136, 98 S. W. 2d 304, 305, wherein citing Browning v. Mullins, 13 S. W. 427, 12 Ky. Law Rep. 41, and Lincoln Court Realty Co. v. Kentucky Title Savings Bank & Trust Co., 169 Ky. 840, 185 S. W. 156, the court said: "In a proper case a nonassenting stockholder may enjoin a threatened ultra vires act or contract of the corporation, but a stockholder cannot attack acts or contracts as ultra vires, where he has given his consent thereto or has participated in the ultra vires act."

Neither can we agree with counsel for appellants that the Master Commissioner and the Chancellor erroneously concluded that a "private" or "side" agreement was not entered into by Mr. Shannon and the other shareholders of the company to the effect that Mr. Shannon's stock was to be callable only after his death. We find no testimony in support of this contention. Mr. Shannon testified that he had an understanding with Mr. Marcum and Mr. D. G. Shannon that they would make a contract outside of the record. But he went no further than to say that the agreement was that he was to share "equally with the Common Stock Shareholders in all dividends beyond 6 per cent on the entire body of stock." No other witness testified for Mr. Shannon on this issue and Mr. Marcum and D. G. Shannon testified that no private agreement was had.

Finally, it is argued that the Corporation should not be granted equitable relief because it failed to come into equity with clean hands. Whilst we will give full force and effect to this maxim of equity, we see no application for it in the facts of this case. The Debenture Stock was issued at the suggestion and insistence of appellants' decedent. He prepared the minutes of the meetings and the resolutions which were adopted, and caused the provision for the redemption of the stock to be printed on the stock certificates. The Corporation acted pursuant to a plan devised by appellants' decedent who, following the advice of a tax accountant, evidently was attempting to convert a portion of its undivided profits into a fixed deductible debt and thus to effect a saving in taxes on income. Since this plan was one proposed to the other shareholders by Mr. Shannon, neither he nor his executors can complain of any hardship emanating therefrom or obtain relief by

invoking the maxim of equity, "He who comes into equity, must do so with clean hands."

Thus the rights of the parties must be determined in accordance with the resolutions adopted by the Corporation and the contract expressed on the face of the stock certificates; and the same would have been true had the Corporation voluntarily or involuntarily entered into liquidation. Had this occurred, appellants' decedent, in consideration of the company's right to redeem, would have obtained a distinct advantage over the other shareholders by reason of his right of preference in the liquidation of the assets.

The judgment is affirmed.